**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**Catherine DEMPSTER, et al., Defendants.**

**Civ. A. No. 3–84–327.**

United States District Court, E.D. Tennessee, S.D.

March 17, 1986.

Raymond R. Murphy, Jr., James Buckner, Chattanooga, Tenn., for Federal Deposit Ins. Corp.

Jack B. Draper, Knoxville, Tenn., for Dempster, Flenniken and Oakes.

John McLellan, Richard A. Spivey, Kingsport, Tenn., for Alpha and Jack Patrick.

Thomas D. Kerr, Jr., Knoxville, Tenn., for Thayer.

Ralph E. Harwell, Randall Nichols, Knoxville, Tenn., for Adams.

L. Caesar Stair, III, Knoxville, Tenn., for Watson.

Robert R. Crossley, Knoxville, Tenn., for Fortune.

Don Stansberry and Dennis McClane, Knoxville, Tenn., for Gettys, Lay, Bell and Regas.

Robert S. Young, Knoxville, Tenn., for Thompson, Cochran, Nacey, Terrell, Tucker, Sherbakoff, Underwood and Young.

David W. Elrod, Dallas, Tex., pro se.

Mack A. Gentry, Knoxville, Tenn., for Browder.

Archie Carpenter, Knoxville, Tenn., for Richardson.

Jess D. Campbell, Knoxville, Tenn., for Russell.

David E. Rodgers, Knoxville, Tenn., for C.H. Butcher, Sr., and C.H. Butcher Jr.

Jack M. Tallent, Robert A. Finley, Knoxville, Tenn., for Ward and Wood.

Robert H. Watson, Jr., Knoxville, Tenn., for Woodson.

Lewis S. Howard, Knoxville, Tenn., for Goodstein.

Stuart J. Gordon, E. Blake Moore, for Sudman and Langley.

William T. Ramsey, Knoxville, Tenn., for Jacob Butcher, and G.W. Ridenour, Jr.

Neal S. Melnick, for James R. Martin.

James R. Moore, Knoxville, Tenn., for C.H. Butcher, Jr.

## ORDER

VINING, District Judge, Sitting by Designation.

The parties to this action are before the court on a motion to strike by the plaintiff under Federal Rule of Civil Procedure 12(f) and on motions to amend, leave to file counterclaims, and leave to add the United States as a third party defendant submitted by a number of the defendants. These motions are directed to specific affirmative defenses and counterclaims including negligence, contributory negligence, mitigation of damages, estoppel, judicial estoppel, waiver, and laches.

## I. FACTS

The Federal Deposit Insurance Corporation (FDIC) under 12 U.S.C. § 1811, *et seq.*, in its corporate capacity was insurer of the United American Bank of Knoxville (UAB–K) and as such performed periodic examinations of the bank. On February 14, 1983, the Commissioner of Banking of the State of Tennessee determined that UAB–K was insolvent. At that time the Commissioner assumed custody and control of the bank's affairs and appointed the FDIC as receiver of UAB–K. This receivership was accepted by the FDIC at that time.

Acting as receiver, the FDIC transferred certain assets and liabilities to First Tennessee Bank (FTB) who assumed the deposits and liabilities of UAB–K under a purchase and assumption agreement approved by the Chancery Court of Knox County, Tennessee, on February 15, 1983. In order to facilitate the purchase and assumption agreement with FTB, the FDIC, acting in its corporate capacity (FDIC/Corporation) obtained certain assets assigned to it by the FDIC as receiver (FDIC/Receiver). In conjunction with this, the FDIC/Receiver assigned to the FDIC/Corporation all claims which UAB–K could maintain against the defendants in this action. On April 27, 1984, the FDIC, in its corporate capacity and as assignee of these rights, filed suit against the officers and directors of UAB–K for breach of statutory duties, breach of common law duties, and breach of contractual duties owed by the defendants to UAB–K, requesting damages in the amount of $200,000,000.

## II. PREMATURITY OF MOTION TO STRIKE

On May 25, 1984, a status conference was held wherein the defendants were directed to file answers to the complaint as soon as possible. The court, during the conference, also requested that motions be limited. The defendants have relied on this conference to support their contention that the motion to strike is premature. The court requested the defendants' answer within a 20–day period even if the answers included general denials. Because of this requirement, the defendants assert that the defenses to which the motion to strike is addressed are appropriate areas of discovery and should not be stricken. This would allow defendants more time for discovery, which they deem necessary due to the time restraints they believed were placed on the filing of answers to the complaint. In fact, the defendants have had ample time within which to expand upon their answers to the complaint.

The purpose of a Fed.R.Civ.P. 12(f) motion to strike is to test the legal sufficiency of defenses. As the plaintiff has pointed out, such a motion will be granted when a defense is insufficient or the granting of the motion will serve to narrow the issues presented by the litigation. *Kelly v. Kosuga*, 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1959); *Kaiser Aluminum v. Avondale Shipyards, Inc.*, 677 F.2d 1045 (5th Cir.1982). The granting of a motion to strike is in the discretion of the court. If the court determines the defenses to be insufficient as a matter of law, the granting of a motion to strike is appropriate.

## III. CONTRIBUTORY NEGLIGENCE, ESTOPPEL, AND MITIGATION OF DAMAGES

### A. *Dual Capacity of the FDIC*

The defendants have asserted various affirmative defenses against the plaintiff which include contributory negligence, estoppel, and mitigation of damages. Additionally, the defendants' motions to amend include counterclaims of negligence and gross negligence. These defenses and counterclaims involve the actions of the FDIC prior to the assignment of the cause of action by FDIC/Receiver to FDIC/Corporation and are essentially the same assertions with different titles.

In order to address these defenses and counterclaims it is necessary to investigate the purpose of the FDIC as designed by Congress and the means by which this purpose can be effectuated. The purpose of

the FDIC is to promote stability and confidence in the nation's banking systems. *Gunter v. Hutcheson,* 674 F.2d 862 (11th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63, *reh. denied,* 459 U.S. 1059, 103 S.Ct. 477, 74 L.Ed.2d 624 (1982); *First State Bank of Hudson County v. United States,* 599 F.2d 558 (3d Cir.1979). This purpose is achieved in two ways, first by providing insurance for payment to depositers of banks in case of failure and second by providing a method of handling failed banks. In the first instance, the FDIC in its corporate capacity acts as insurer of the deposits of the bank. In the second instance, the FDIC acts in a separate capacity as receiver of the insolvent bank.

Generally after a state bank has been declared insolvent, the proper state banking official will place the bank into receivership, appointing the FDIC as receiver, pursuant to federal and/or state laws and regulations. The FDIC/Receiver may then handle the bank's insolvency in one of two ways. The first, and the least often used, is through liquidation of the assets of the bank and payment of depositors from the proceeds of liquidation. The second method, used in this instance, allows for sale of certain assets and liabilities of the failed bank to another bank, with those assets unacceptable to the purchaser being transferred to the FDIC in its corporate capacity. *Gunter, supra.* That the FDIC/Receiver and the FDIC/Corporation acting in these capacities are two separate entities is a well accepted matter of law. *Gunter v. Hutcheson,* 674 F.2d 862 (11th Cir.1982); *Gilman v. FDIC,* 660 F.2d 688 (6th Cir. 1981); *FDIC v. Godshall,* 558 F.2d 220 (4th Cir.1977); *Freeling v. Sebring,* 296 F.2d 244 (10th Cir.1961). In fact the Federal Deposit Insurance Act statutorily differentiates between the FDIC/Receiver and the FDIC/Corporation contemplating transactions in the nature of the assignment here in question from the FDIC/Receiver to the FDIC/Corporation.

### B. *Defenses Assertable Against Assignee*

The distinction between the FDIC/Receiver and the FDIC/Corporation is necessary in determining the ability of the defendants to assert affirmative defenses against the FDIC raised in their answers and in their motions to amend. As a result of the purchase and assumption agreement, one of the assets transferred to the FDIC/Corporation was the cause of action asserted in this lawsuit against the officers and directors of UAB–K for breach of fiduciary duty and negligence. Several of the defendants have stated that the right of the FDIC to be appointed receiver of UAB–K and the right to bring this action as assignee are dependent upon the primary position of the plaintiff as insurer of the bank and its depositors. This assertion fails to acknowledge the distinction between the FDIC/Receiver and the FDIC/Corporation.

The defendants have attempted to make the FDIC, in its separate capacities, one entity in order to support the affirmative defenses set forth in their answers and motions to amend. The defenses are aimed at the actions of the FDIC in its capacity as insurer of the deposits of UAB–K during its examinations of UAB–K. In order to use these actions as defenses it is necessary to consider the FDIC as one entity so that defenses against the assignee (FDIC) may be asserted for actions prior to the assignment. Such consideration ignores the distinction between the FDIC as receiver and the FDIC in its corporate capacity. The actions of the FDIC/Corporation occurred before the assignment of the action to the FDIC/Corporation but would be assertable as they would be deemed actions of the assignor due to the lack of distinction between the assignor and assignee. However, the dual capacity of the FDIC prevents asserting such claims.

Several defendants have asserted that these actions by the plaintiff in its corporate capacity give rise to the affirmative defenses asserted here in spite of the dual capacity of the FDIC. A general principle of assignment provides that the assignee steps into the shoes of the assignor upon

assignment of the interest and takes the assignment subject to the defenses assertable against the assignor. *Leasing Service Corp. v. River City Construction, Inc.,* 743 F.2d 871 (11th Cir.1984); *Citibank, N.A. v. Tele/Resources, Inc.,* 724 F.2d 266 (2d Cir.1983); *State Mutual Life Assurance Company of America v. Deer Creek Park,* 612 F.2d 259 (6th Cir.1979). The defendants have cited the Restatement (Second) of Contracts § 336 (1981) as support for the contention that any actions by the assignee (FDIC/Corporation) prior to the assignment can be used against the assignee as defenses. If this were the case, the above principle of assignment, would not be appropriate. The assignee would be subject to actions not assertable against the assignor and therefore would have additional characteristics not applicable to the assignor and would not be, as it were, stepping into the shoes of the assignor or taking on the characteristics of the assignor.

A careful reading of section 336 indicates that the assertion of any defenses against the assignee applies only in instances where the assignee is a party to the underlying contract or where the conduct of the assignee occurs subsequent to the initial assignment but prior to a reassignment. These facts are nonexistent in the present cause. This reading is supported by *American Training Services, Inc. v. Commerce Union Bank,* 415 F.Supp. 1101 (M.D.Tn. 1976), *aff'd,* 612 F.2d 580 (6th Cir.1979). In that case the actions by the assignee were more closely associated with the underlying contract than in the instant case. Yet the court found actions by the assignee prior to assignment could not be used as affirmative defenses against the assignee.

■ In the instant case the main action is essentially one of the bank against its officers and directors which action was assigned to the FDIC/Corporation. The FDIC in such capacity steps into the shoes of UAB–K as plaintiff in this suit. As such the FDIC/Corporation is not subject to defenses asserted against it for actions prior to the assignment, as it was not a party to the obligations of the officers and directors to UAB–K nor was it a prior assignee of the action. Since the defenses of contributory negligence, negligence, estoppel, and mitigation of damages involve actions prior to the assignment upon which this action is based, these defenses are not assertable against the plaintiff.

### C. *Duty of the FDIC and Negligence*

The defendants' assertions of contributory negligence rest upon the supposition that contributory negligence does not require a duty on the part of the party against whom the defense is being asserted. The FDIC performed certain bank examinations which the defendants allege should have uncovered practices leading to the failure of UAB–K. The defendants allege the failure to discover constitutes negligence on the part of the FDIC. They further allege that the failure to inform the bank and its officers and directors of any illicit banking practices which it did uncover was negligence on the part of the FDIC and such actions of negligence should act as a bar to recovery. These allegations of negligence are couched in several different forms including affirmative defenses of contributory negligence, estoppel, and mitigation of damages as well as counterclaims against the FDIC for negligence and third party complaints against the United States for the alleged negligent actions of the FDIC.

■ The defendants contend that no duty is required for the affirmative defense of contributory negligence. The assertion is correct when applied to general tort law. However, the case currently before the court involves banks and banking practices, where it is a general principal of banking law that "[i]f, through recklessness and inattention to the duties confided to him, frauds and misconduct are perpetrated by other officers and agents or co-directors, which ordinary care on his part would have prevented, [a director of a bank] is personally liable for the loss resulting." In 1 Michie on Banks and Banking, chapter 3, § 63 at p. 280 (1973) (footnote omitted).

The duty to discover fraud and misconduct is squarely upon the officers and directors of the banking institution and may not be transferred to the FDIC by purchasing insurance from it, *First State Bank of Hudson Co.*, nor by attaching to the FDIC negligence for actions performed at the time during which officers and directors had primary responsibility for the bank. In fact, the insurance provided by the FDIC is insurance benefiting the depositors of the bank, not an indemnification of its officers and directors. This reasoning applies to affirmative defense assertions of contributory negligence, estoppel, and mitigation of damages as well as to counterclaims for negligence on the part of the FDIC.

█ In their motions for leave to file counterclaims the defendants attempt to set forth the negligence claim by several methods, all of which impose a duty on the FDIC, which imposition is ill-founded. These methods are all aimed at the bank examinations performed by the FDIC prior to the Commissioner of Banking rendering UAB–K insolvent. "The purpose of the bank examinations by the FDIC under 12 U.S.C. § 1820(b) is to prevent losses that would result in claims against the insurance fund.... If the bank examination by the FDIC reveal any irregularities or fraud such examinations, though they may inure incidentally to the benefit of a bank, are intended primarily for the protection of the insurance fund," *First State Bank of Hudson County v. United States*, 599 F.2d 558, 563 (3d Cir.1979) (footnote omitted); see also *In re Franklin National Bank Securities Litigation*, 478 F.Supp. 210 (E.D.N.Y.1979), and not for the benefit of its officers and directors. "The failure of the FDIC to discover fraud or weakness, or even to disclose such adverse information if it is discovered does not establish a claim for relief against the United States" (or the FDIC). Nor does the alleged failure to take action to remedy the problems establish a claim for relief. The supposed assumption of supervisory duties by the FDIC upon which the defendants allegedly relied in performing their duties as officers

and directors of the UAB–K is nonexistent. The examinations performed by the FDIC were those authorized by the Federal Deposit Insurance Act and cannot be seen as services to the bank upon which defendants could rely in performance of their duties as officers and directors. "Federal bank examinations are not beacons to light the path of erring directors or gulled stockholders," *Harmsen v. Smith*, 586 F.2d 156, 158 (9th Cir.1978).

## IV. JUDICIAL ESTOPPEL

Several of the defendants have requested the court to allow amendments to their answers asserting the defense of judicial estoppel as a result of the plaintiff's claim of legal malpractice in an action in the Southern Division of the United States District Court for the Eastern District of Tennessee styled *FDIC v. Ridenhour, Bowers, Shumate, McCloud & Lacy*, Civil Action No. 1–84–649 (Ridenhour complaint).

█ Judicial estoppel is a general precept whereby a party is bound by sworn statements made during judicial proceedings, generally in former litigation, and cannot contradict the sworn statements in the subsequent litigation. *Allen v. Neal*, 217 Tenn. 181, 396 S.W.2d 344 (1965); *Melton v. Anderson*, 32 Tenn.App. 335, 222 S.W.2d 666 (1948). The defendants failed to meet these elements on several counts. First, the Ridenhour complaint filed by plaintiff is not made under oath. The pleadings involve only the position of the plaintiff in the action. Consequently, judicial estoppel may not rest on this basis. *Sturkie v. Bottoms*, 203 Tenn. 237, 310 S.W.2d 451 (1958). Second, the allegations in the Ridenhour complaint are not inconsistent with the allegations in the present action. The Ridenhour complaint generally deals with the legal malpractice of the defendants in their dealings with UAB–K. The instant case involves negligence and a breach of certain contractual fiduciary duties of the defendants toward UAB–K. These allegations considered together are not inconsistent. The allegation of mal-

practice by one set of defendants does not preclude the assertion of breach of contract and breach of fiduciary duties against the others, even though they may involve the same set of facts. Consequently, the court finds that the defense of judicial estoppel is insufficient as a matter of law and cannot be raised as a defense in the current action.

## V. DEFENSES OF LACHES, WAIVER, AND STATUTE OF LIMITATIONS

■ The defendants have asserted, through their original answers and through their motions to amend, the defenses of laches, waiver, and running of the statute of limitations. These defenses all involve the passage of time from the date on which the right of action accrues to the actual filing of the suit. This right of action did not arise until the bank was closed by the Commissioner of Banking of the State of Tennessee in February 1983. Prior to that time any cause of action for breach of fiduciary duty and negligence against the officers and directors would have to be made by these same officers and directors, as the controlling body of the bank, or by the shareholders to whom these officers and directors were providing information with regard to the status of the bank. Without knowledge of the alleged wrongful activities of the officers and directors, the shareholders would have neither the opportunity nor the information sufficient to bring suit. *Federal Deposit Insurance Corporation v. Bird*, 516 F.Supp. 647 (D.P.R.1981). Therefore, the right of action would not arise until after the officers and directors relinquished control of the bank, *FDIC v. Byrd*, in February 1983. *FDIC v. Bird*. At that time the FDIC/Corporation was assigned the right of action of the bank against its officers and directors, and filed suit pursuant to that right on April 27, 1984, well within the statute of limitations and as soon as practicable after obtaining that right. Thus the defenses of laches, waiver, and running of the statute of limitations are insufficient as a matter of law.

## VI. COUNTERCLAIMS AGAINST FDIC/RECEIVER

■ A number of the defendants have asserted counterclaims against the FDIC in its capacity as receiver of UAB–K. As noted previously in this opinion, the FDIC acts in two separate capacities and hence is considered two separate entities. Since the FDIC as receiver is not a party to this action, the defendants may not assert any claim against the FDIC in that capacity, as this court has no jurisdiction over counterclaims asserted against the FDIC in its capacity as receiver of UAB–K. *In re F & T Contractors, Inc.*, 718 F.2d 171 (6th Cir. 1983).

## VII. COUNTERCLAIMS FOR LOSS IN VALUE OF UAB–K STOCK

■ Requests to file additional counterclaims have been made by several defendants for loss of value of their stock in UAB–K. These counterclaims are made by the defendants in their capacities as shareholders of UAB–K. However, the defendants have no standing to support the counterclaim, "as the receiver of a bank after its appointment, represents the bank, its shareholders and creditors." *O'Connor v. Rhodes*, 79 F.2d 146 (D.C.Cir.1935); *Landy v. Federal Deposit Insurance Corporation*, 486 F.2d 139 (3d Cir.1973), *cert. denied*, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974); *Gregory v. Mitchell*, 634 F.2d 199 (5th Cir.1981); *Schaffer v. Universal Rundle Corp.*, 397 F.2d 893 (5th Cir.1968). Any claim for loss of value of UAB–K stock must then be brought by FDIC/Receiver as representations of UAB–K. Hence, the motions for leave to file counterclaims for recoupment of loss of value of UAB–K stock must be denied.

## VIII. THIRD–PARTY COMPLAINTS AGAINST THE UNITED STATES

A number of defendants have requested leave to file third-party complaints against the United States for acts of the FDIC as its agent. These claims are in two forms. First are the third-party complaints by defendants Woodson and Browder for losses

resulting from the devaluation of the UAB–K stock. As noted earlier in this opinion, the defendants in their capacities as shareholders of UAB–K are not the proper parties to bring an action against the FDIC for devaluation of the stock. This action is one lying in the receiver of a failed bank, not in its shareholders, *O'Connor v. Rhodes; Gregory v. Mitchell; Schaffer v. Universal Rundle Corp.,* and must be brought by the FDIC in its capacity as receiver of UAB–K.

The second form of third-party complaints raised by a majority of the defendants against the United States of America involves the alleged negligence of the FDIC. Since this allegation is in the form of a third-party complaint administrative remedies need not be exhausted prior to impleading the United States as a third-party defendant. 28 U.S.C. § 2675(a). However, the claim may be advanced only if "a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The claim, sounding in negligence, requires a duty on the part of the FDIC to the defendants. The court has determined that the FDIC owed no duty to the defendants; therefore, the defendants have failed to state a claim upon which relief can be granted and the request for leave to file third-party claims is hereby DENIED.

For the above stated reasons, the plaintiff's motions to strike are hereby GRANTED, and defendants' motions to amend, requests to file counterclaims, and requests to file third-party complaints are hereby DENIED.

SO ORDERED, this 17th day of March, 1986.