EBEL, Circuit Judge,
dissenting in part.
While I agree with much of the majority opinion, I must dissent from the majority’s decision to overturn the judgment as a matter of law entered in Murphy’s favor on its claim for breach of contract. Because I would conclude that the district court correctly determined that Murphy was entitled as a matter of law to recover on both its breach-of-contract theories, I respectfully dissent from that portion of the majority’s opinion.
Murphy’s breach-of-contract claim sought to recover from Trivental for money Murphy paid Trivental’s unpaid subcontractors on the Oklahoma City project. Murphy asserted two different theories supporting this breach-of-contract claim. First, Murphy asserted that Trivental had breached the General Contract between Murphy and Trivental, which expressly required Trivental to pay all subcontractors on any project it undertook for Murphy. Second, Murphy asserted that, by failing to pay the Oklahoma City subcontractors, Trivental breached its contracts with those subcontractors and that Murphy, as the assignee of those subcontractors, is now entitled to recover from Trivental for its breach. Trivental has never disputed that *1023 it failed to pay some of the Oklahoma City subcontractors as required by both the General Contract and the individual contracts between Trivental and the subcontractors. In light of that, Murphy is entitled as a matter of law to recover, under either theory, for breach of contract.
The majority, however, concludes that a jury should have considered Trivental’s defense to these breaches, premised on Murphy’s own breach of the Specific Contracts governing the New Iberia, Tulsa and Hugo projects. While Murphy’s breach of those three Specific Contracts certainly provides Trivental with a counterclaim that it can, and has, asserted against Murphy, it does not provide Trivental with a defense to its breaching of the General Contract and the contracts Trivental had with its Oklahoma City subcontractors. For this reason, I dissent.
I. Trivental’s asserted defense.
Trivental asserts a “first breach” defense, arguing that Murphy’s earlier breach of the Specific Contracts covering the New Iberia, Hugo and Tulsa projects provides Trivental with a defense to Trivental’s later breach of its General Contract with Murphy. And although Triven-tal never makes the argument on appeal, the majority concludes that this same “first breach” defense should also apply to Murphy’s breach-of-contract claim that Murphy asserts as the subcontractors’ as-signee.
Under such a defense, one party’s material breach of a contract will excuse the other party from performing his reciprocal obligations due under that same contract. “[I]t is a condition of each party’s remaining duties to render performance to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time.” Restatement (Second) of Contracts § 237 (1981). The Restatement recognized that, similar to this case, “[i]n many disputes over failure of performance, both parties fail to finish performance, and the question is whether one of them is justified in doing so by the other party’s failure.” Id. § 237 cmt. b.
This “first breach” defense, however, applies only when the entities involved are parties to the same contract: “Under the [first breach] rule stated in [§ 237], only duties with respect to the performances to be exchanged under the particular exchange of promises are affected by a failure of one of those performances. A duty under a separate contract is not affected.” Id. § 237 cmt. e; see also id. § 231 cmt. d (noting that “[t]he rules that protect parties whose performances are to be exchanged under an exchange of promises apply only when the promises are exchanged as part of a single contract”).
This is where Trivental’s “first breach” defense fails. Trivental seeks to excuse its breach of the General Contract as it pertains to Trivental’s paying the Oklahoma City subcontractors, and its contracts with the Oklahoma City subcontractors, by relying on Murphy’s breach of other, separate contracts addressing the New Iberia, Hugo and Tulsa projects.
II. The General and Specific Contracts are not one single contract.
At the outset of the parties’ business relationship, Trivental and Murphy entered into a General Contract. That General Contract did not award Trivental any specific construction project, but instead contemplated that any construction project that Trivental undertook for Murphy in the future would be governed both by the terms of the General Contract and by a Specific Contract that addressed the details of that particular project. Each pro *1024 ject had its own separate Specific Contract. While the General and Specific Contracts were certainly related, they cannot be considered all one contract. Nor can the separate Specific Contracts be considered together to create a single contract.
Because they are not all one contract, Murphy’s breach of the Specific Contracts governing the New Iberia, Hugo and Tulsa projects cannot give Trivental a defense to its own breach of the General Contract. The General Contract required that Trivental. pay the subcontractors on all projects. But it did not include a reciprocal provision requiring Murphy to pay Triven-tal on each specific project. Rather, the Specific Contract governing each particular project addressed Murphy’s duty to pay Trivental. Therefore, Murphy’s failure to pay Trivental in full for the New Iberia, Hugo and Tulsa projects was a breach of the Specific Contracts governing each of those projects. Murphy’s breach would certainly give Trivental a cause of action to recover against Murphy.[1] But Murphy’s breach of those Specific Contracts would not amount to a breach of the General Contract.
The result is the same even if we assume that the Specific Contracts each incorporate the General Contract’s terms. In that case, because the Specific Contracts represent separate contracts between Trivental and Murphy, the fact that Murphy breached the Specific Contracts governing the New Iberia, Hugo and Tulsa projects would not excuse Trivental from paying the subcontractors under the separate Specific Contract addressing the Oklahoma City project.
To conclude otherwise and treat all these agreements as a single contract produces an anomalous result. Timewise, Murphy breached the Specific Contracts concerning the New Iberia, Hugo and Tulsa projects before Trivental and Murphy agreed to undertake the Oklahoma City project.[2] Viewing all these contracts as one, therefore, would mean that Trivental already had a defense to its failing to pay the Oklahoma City subcontractors before the parties even agreed to the Specific Contract addressing the Oklahoma City project. I cannot accept such a view of Trivental’s and Murphy’s business relationship.
III. II. Trivental’s breach of the contracts with its Oklahoma City subcontractors.
Even if the General and Specific Contracts between Trivental and Murphy can be considered a single contract, Murphy’s breach of that contract by not paying Tri *1025 vental in full on the New Iberia, Hugo, and Tulsa projects would still not excuse Trivental from paying its Oklahoma City subcontractors the amount Trivental owed on the separate contracts Trivental had with these subcontractors. It is telling that Trivental does not even rely on such a defense in its arguments to this court. And there is no suggestion that Trivental’s contracts with its subcontractors should be considered part of the contractual relationship between Trivental and Murphy. Moreover, Trivental concedes that it breached its contracts with several subcontractors by failing to pay them in full on that project. Murphy, therefore, as the subcontractors’ assignee, is entitled as a matter of law to recover from Trivental for Trivental’s breach of its contracts with those subcontractors.
In nevertheless providing Trivental with a defense, the majority relies upon the Restatement (Second) of Contracts § 336(4) (1981), which indicates that “[a]n assignee’s [here Murphy’s] right against the obligor [Trivental] is subject to any defense or claim arising from his conduct or to which he was subject as a party or a prior assignee because he had notice.” But § 336’s comment h further explains that
[t]he conduct of the assignee [here Murphy] or his agents may, like that of any obligee, give rise to defenses and claims which may be asserted against him by the obligor [here Trivental]. An obligee who is subject to such a defense or claim cannot improve his position by assigning the right to an assignee who is not subject to the defense or claim and then take a reassignment.
Id. cmt. h (emphasis added). By way of example, the comment gives this illustration:
A is fraudulently induced by B, the agent of C, to sell goods to C. C assigns his rights to D, who pays value in good faith and without notice. D assigns to E, who knows of the fraud. A cannot avoid the contract as against E, who succeeded to D’s rights. But if E assigns to C, A’s power of avoidance will revive.
Id. illus. 15.
Section 336’s comment h and illustration 15 do not at all describe what occurred here. Therefore, that section of the Restatement would arguably not even apply to this situation. But even if this court interpreted § 336(4) to apply beyond the language and example used by comment h and its illustration 15, there is no indication that § 336(4) suggests that an assignee’s conduct in the performance of a completely separate contract, occurring prior to the assignment, would give an obligor such as Trivental a defense to its breach of a contract with an assignor who then later assigned his rights to that as-signee.
Although there is only minimal case law applying the Restatement’s § 336(4), those cases for the most part support this narrow interpretation of § 336(4). In particular, Federal Deposit Insurance Corporation v. Dempster, 637 F.Supp. 362 (E.D.Tenn.1986), held that “[a] careful reading of Section 336 indicates that the assertion of any defenses against an as-signee applies only in instances where the assignee is a party to the underlying contract or where the conduct of the assignee occurs subsequent to the initial assignment but prior to a reassignment.” Id. at 366 (emphasis added) (relying on American Training Servs., Inc. v. Commerce Union Bank, 415 F.Supp. 1101 (M.D.Tenn.1976), aff'd, 612 F.2d 580 (6th Cir.1979)); see also F.D.I.C. v. Manatt, 723 F.Supp. 99, 105 (E.D.Ark.1989) (following Berry and holding that litigant could not “assert defenses against the FDIC as assignee based on *1026 actions taken by the FDIC in its corporate capacity prior to the assignment”); F.D.I.C. v. Berry, 659 F.Supp. 1475, 1482 (E.D.Tenn.1987) (following Dempster). In reaching this conclusion, the district court in Dempster relied on the “general principle of assignment [that] provides that the assignee steps into the shoes of the assign- or upon assignment of the interest and takes the assignment subject to the defenses assertable against the assignor.” Dempster, 637 F.Supp. at 365-66. But to read Restatement § 336 to permit “actions by the assignee [occurring] prior to the assignment” would improperly subject the assignee “to actions not assertable against the assignor and therefore [the assignee] would have additional characteristics not applicable to the assignor and would not be, as it were, stepping into the shoes of the assignor or taking on the characteristics of the assignor.” Id. at 366.
The only contrary case, which does expressly reject the reasoning in Dempster and Berry, State v. Hogg, 311 Md. 446, 535 A.2d 923, 933-35 (1988), has been overruled on other grounds. See Dawkins v. Baltimore City Police Dep’t, 376 Md. 53, 827 A.2d 115, 115-16 (2003). And Oklahoma courts do not appear to have ever adopted or applied this Restatement provision. In light of this uncertainty, I would not rely upon § 336(4) to grant Trivental a new trial based upon a theory that Triven-tal never argued to this court.
IV. Conclusion
Because I do not think that Murphy’s failure to pay Trivental in full on the New Iberia, Hugo, and Tulsa projects gave Trivental any defense to its failure to pay its subcontractors on the later Oklahoma City project, I respectfully dissent from the majority’s decision to reverse the district court’s judgment for Murphy, entered as a matter of law, on Murphy’s breach-of-contract claim.

. The General Contract's paragraph 8 reiterates this:
[Murphy] retains the right to withhold, retain, and/or set off any payments due to [Trivental] in this or any other transaction or under any contract such amounts as [Murphy] deems sufficient to protect [Murphy] and its property against any claim by [Trivental's] employees, fabricators, material men, subcontractors, suppliers, and workmen which could or may become a lien or claim against [Murphy] or its property. [Murphy] may at any time pay and discharge such lien or claim and deduct the amount so paid with together with costs and attorney’s fees, from any payment then due or thereafter to become due to [Triven-tal],
This language also further indicates that each project was governed by a separate contract.

. It is difficult to say exactly when Murphy breached those orally modified Specific Contracts. Trivental asserts that Murphy agreed to pay for extra work Trivental performed on these projects through later payments Murphy would make to Trivental on future projects. Nevertheless, it seems safe to say that Triven-tal considered Murphy to have breached that promise before Trivental ever agreed to construct the Oklahoma City project.