# Richmond.

## McCandlish v. The Commonwealth.

### November 28, 1882.

JURISDICTION—*Construction of statutes—Cargoes—Case at bar.*—On board vessels seized whilst employed in violating the act of 6th March, 1880 (Acts, 1879–80, p. 197), were cargoes of oysters. These, the justices, examining the captains, who were prisoners, ordered the sheriff to sell and hold the net proceeds until the decision of the cases. These prisoners in writing directed the sheriff to pay the proceeds to their attorney, M, for his services. After the prisoners had been convicted in the county court, M petitioned that court to order the sheriff to pay him the proceeds. The Commonwealth resisted, but the county court entered the order; which, on error, the circuit court reversed, and adjudged the Commonwealth entitled to receive the money. On error to this court—

HELD:

1. The State can be sued only in the tribunals designated by her, and she has not designated the county courts; but the State instituted these proceedings in the county court, and the demand made by M's petition is in the nature of a counter claim, and is not a direct, original suit against the State.

2. As that act does not attempt to forfeit the cargoes of vessels employed in violating its provisions, the Commonwealth acquired no title to the oysters by forfeiture.

3. As the oyster beds belonging to the Commonwealth are common to all her citizens, subject to certain restrictions as to the mode of taking them, and it does not appear affirmatively that the oysters were *tortuously* taken, the Commonwealth acquired no right of detention as upon recaption. Mere seizure gave no right of property.

4. As the Commonwealth had no title to the oysters, she could not of course be entitled to receive the proceeds.

Error and *supersedeas* to judgment of circuit court of Matthews county rendered at its special term in June, 1882, whereby an order of the county court of said county, di-

recting the sheriff thereof to pay Robert McCandlish $283.75, the net proceeds of the oysters, found on certain vessels seized whilst employed in violating the act of 6th March, 1880 (Acts 1879–80, p. 197), and sold by him, was reversed, and the said sum of money adjudged to belong to the Commonwealth.

To this decree of the circuit court the said Robert Mc-Candlish obtained from one of the judges of this court a writ of error and *supersedeas.*

The opinion of the court fully states the facts and proceedings of the case.

*J. B. Donovan,* for the appellant.

*Attorney-General F. S. Blair,* for the Commonwealth.

BURKS, J., delivered the opinion of the court.

At the time of the seizure of the vessels referred to in the cases just decided, there was on board a quantity of oysters, which, it was agreed, should be sold by the sheriff having the vessels in custody, and the net proceeds of sale be held by him subject to the decision of the cases. On the day succeeding this agreement, the captains or masters of the vessels assigned the proceeds of sale to the plaintiff in error, McCandlish, as and for his fee in defending them in the cases mentioned. After judgment on the indictments, McCandlish filed his petition in the county court, which rendered the judgments, asking that the sheriff be directed to pay over to him the net amount realized from the sale of the oysters under the agreement aforesaid.

The petition was resisted by the Commonwealth through her attorney, but the court, after hearing argument, ordered payment according to the prayer of the petition. This order, on appeal by the Commonwealth to the circuit

court, was reversed by that court, and it was adjudged that the Commonwealth was entitled to receive the money in the hands of the sheriff, and he was required to deposit the same in the Planters National Bank of Richmond, subject to the future order of the said circuit court.

To this judgment a writ of error was awarded McCandlish by one of the judges of this court.

This court is of opinion that the judgment of the circuit court is erroneous.

The Commonwealth did not establish any title to the oysters, and consequently she had no right to the proceeds of sale. She certainly acquired no title by forfeiture. We understood this to be admitted by the attorney-general. The statute under which the prosecutions were had declares a forfeiture of the vessels only, and being highly penal, it cannot, by intendment, be extended so as to include the oysters on board; nor, under the proceedings in these cases, can the right of the State be maintained on the principle of recaption. It is true that all the beds of the bays, rivers and creeks, and the shores of the sea within the jurisdiction of the Commonwealth, and not conveyed by special grant or compact according to law, are the property of the Commonwealth, and may be used as a common by all the people of the State for the purposes of fishing and fowling, and of taking and catching oysters and other shellfish, subject to reservations and restrictions imposed, and among the latter is the absolute prohibition by the act of March 6, 1880, of taking or catching oysters with dredges or instruments other than ordinary oyster tongs; and if it be said that the taking of oysters unlawfully from the waters of the State gives no title to them as against the State, and that she may retake them from a wrong-doer, still there is a lack of proof that the particular oysters in question were unlawfully taken. To be sure, they were found in the vessels seized, but where, when, in what man-

ner, or by whom, they were caught or taken, is not shown. The record is wholly silent as to these matters. For aught that appears, they may have been legitimately acquired by purchase. At any rate, there is no proof to rebut the legal presumption of ownership arising from possession, and there was no proceeding to test the title. The mere seizure gave no right of property, nor did the right of detention, as upon a recaption result without proof of a prior tortuous taking.

Indeed, the argument addressed to us by the attorney-general did not question the correctness of the propositions which have been stated. It was rather a concession (implied at least) of the right of McCandlish to the money ordered by the county couit to be paid to him; for the entire argument was directed exclusively against the jurisdiction of that court to make the order. The burden of his contention was, that the petition of McCandlish was a suit against the State, and that the State could not be sued in a county court.

That the Commonwealth cannot be sued except in the manner and in the tribunals expressly provided, none will deny; for, as has been observed, "it is a settled principle of universal jurisprudence that no sovereign can ever be sued save with his own consent, and of course subject to such limitations as he may think fit to impose." 4 Minor's Inst. part 1, 493; *Higginbotham's Ex'x* v. *Commonwealth,* 25 Gratt. 627, 637. The mistake of the attorney-general is in assuming that the petition was a suit against the Commonwealth. The State was the original actor in the matter. She it was that instituted the proceedings, and through her officers seized and held possession of the property in dispute. She failed to make good her claim, and the application in the same proceedings was to restore to the defendants, the owners or their assignee, the property which she had seized and to which they were entitled.

The demand was in the nature of a counter claim, and not a direct original suit against the State. *The Siren,* 7 Wall. 152, 154, 155.

The judgment of the circuit court must be reversed and that of the county court affirmed, and an order will be made directing the sheriff of Matthews county to withdraw the deposit ordered by the circuit court, if it has been made, from the bank and pay it over to the plaintiff in error.

JUDGMENT OF CIRCUIT COURT REVERSED AND THAT OF COUNTY COURT AFFIRMED.