535 A.2d 923

STATE of Maryland and State of Maryland Deposit
Insurance Fund Corporation

v.

Charles C. HOGG et al.

No. 94, Sept. Term, 1987.

Court of Appeals of Maryland.

Jan. 14, 1988.

Evelyn O. Cannon, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Dennis M. Sweeney, Deputy Atty. Gen., Mark D. McCurdy and Carmen M. Shepard, Asst. Attys. Gen., Baltimore, and Irwin Goldbloom, Everett C. Johnson, Jr., C. Cabell Chinnis, Jr., and Latham & Watkins, Washington, D.C., on the brief), for appellant.

Andrew H. Marks (John I. Stewart, Jr., Keith Fischler and Crowell & Moring, Washington, D.C.), for appellees Leonard Bass, Michael J. Dietz, Jerome E. Dolivka.

Henry R. Elsnic and Thomas J. Bodie and Power & Mosner, Towson, for appellee James D. Laudeman, Jr.

Harold H. Burns and Maureen F. Mackey, Baltimore, for appellee Terry Neifeld.

Jerold Oshinsky, Nancy A. Markowitz and Anderson, Baker Kill & Olick, Washington, D.C., for appellee George W.H. Pierson.

Joshua R. Treem and Schulman & Treem, P.A., Baltimore, for appellee Ralph K. Holmes.

Francis S. Brocato and Brocato & Keelty, Baltimore, for appellee Paul V. Trice.

Thomas R. Kline, Kathleen H. McGuan and Manatt, Phelps, Rothenberg & Evans, Washington, D.C., for appellees Judith Miles Budoff and Jerry D. Whitlock.

Howard B. Possick and Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for appellee John D. Faulkner, Jr.

John H. Zink, III and Cook, Howard, Downes & Tracy, Towson, for appellee (Charles C. Hogg, III, on the brief).

Argued Before MURPHY, C.J., COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ., and MARVIN H. SMITH, Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

RODOWSKY, Judge.

This action is brought in the name of the State of Maryland Deposit Insurance Fund Corporation (MDIF), a unit of the Department of Licensing and Regulation (DLR) of the State of Maryland. The defendants are certain individuals who had been officers and directors of the former Maryland Savings–Share Insurance Corporation (MSSIC). MDIF is the surviving corporation of a special statutory merger with MSSIC. MDIF seeks money damages to compensate for harm allegedly caused by the defendants' breaches of duty to MSSIC. The defendants assert by way of answer and counterclaim that the harm complained of resulted wholly or partly from the negligence of state employees in the Division of Savings and Loan Associations (DSL), also a unit in DLR. A motion to dismiss the counterclaim as barred by sovereign immunity was denied by the circuit court. From that denial this appeal was noted. We must first decide whether there is a final judgment. If the appeal is properly before us, we must further decide whether, in principle, a recoupment defense is precluded by sovereign immunity and, if not, whether the defendants' position here is a recoupment defense.

This case arises out of the 1985 savings and loan crisis in Maryland.[1] At that time MSSIC was an insurer of accounts in certain savings and loan associations in Maryland. MSSIC was a nonstock, nonprofit corporation created by Ch. 131 of the Acts of 1962.[2] It is the State's position, unchallenged by the defendants, that MSSIC was not an agent of the State.[3]

By mid–May of 1985 approximately $630 million had been withdrawn from MSSIC insured accounts in the preceding three months, including $116 million withdrawn by depositors on May 13 when two large associations were placed in conservatorship. *See Chevy Chase Sav. & Loan, Inc. v. State,* 306 Md. 384, 392, 509 A.2d 670, 674 (1986). An extraordinary session of the Maryland General Assembly was convened on May 17 to respond to the crisis. One response was the creation of MDIF in DLR by Ch. 6 of the Acts of the First Special Session of 1985, now codified as Md. Code (1980, 1986 Repl.Vol.), § 10–102 of the Financial Institutions Article (FI). Chapter 6, an emergency bill approved May 18, 1985, merged MSSIC into MDIF by uncodified § 4 which reads in relevant part:

[U]pon the effective date of this Act: (i) [MSSIC] shall be and is hereby merged into [MDIF], with [MDIF] as the surviving corporation, without need of the execution or filing of any confirmatory or other articles or instru-

---

1. Historical background is presented in W. Preston, *Report of the Special Counsel on the Savings and Loan Crisis* (1986) and is sketched in *Chevy Chase Sav. & Loan, Inc. v. State,* 306 Md. 384, 509 A.2d 670 (1986).

2. The statutes relating to MSSIC were most recently codified in Md. Code (1980), Title 10 of the Financial Institutions Article.

3. Compare *United States v. Maryland Savings–Share Ins. Corp.,* 400 U.S. 4, 7 n. 2, 91 S.Ct. 16, 18 n. 2, 27 L.Ed.2d 4, 7 n. 2 (1970) (MSSIC is not "an instrumentality of the State and hence entitled to exemption from federal taxation under the doctrine of intergovernmental immunity") with 70 Op. Att'y Gen. —— (1985) [Opinion No. 85–023 (Oct. 15, 1985) ] (reserving on whether MSSIC is best characterized as a public corporation, a quasi public entity, or a private corporation serving a public purpose).

ments; and (ii) all of the assets . . . all of the liabilities, including but not limited to taxes, incurred losses, and other insurance liabilities, and all of the rights, powers, duties, obligations and functions of [MSSIC] are hereby transferred to [MDIF], to the extent consistent with this act. . . .

FI § 10–121(a), enacted by ch. 12 of the Acts of 1986, provided that "[n]otwithstanding any other provision of law, and except as otherwise expressly provided in this section, . [MDIF] retains and may raise the defense of sovereign immunity in any action." Uncodified § 3 of ch. 12 in part states that "[t]he General Assembly did not intend waiver of immunity by any of the Acts of the First Special Session of 1985."

According to a January 1986 report prepared by the Department of Fiscal Services eleven savings and loan associations, previously insured by MSSIC and then in receivership, conservatorship, or subject to withdrawal limits, had a combined assets/liability deficit of over $400 million. Crediting against that deficit only the MSSIC insurance fund and $60 million from a recovery, but without taking any credit for assets in the eleven associations or for any recovery on various possible causes of action, the report projected the State's potential obligation for the deficit to be $172.4 million. Department of Fiscal Services, *Analysis of Funding State Liability for Savings and Loan Obligation* (January 22, 1986). The instant case is part of the State's effort to reduce its exposure.

MDIF here claims against twenty-six former officers and directors of MSSIC who had been elected at various times from savings and loan industry positions. The theory of the suit, which sounds in negligence and in breach of fiduciary duties, is that the defendants violated duties owed to MSSIC and that MSSIC's rights arising out of those violations were acquired by MDIF in the merger. MDIF's first amended complaint, consisting of forty-seven pages, enlarged the number of parties defendant from an original group of ten persons. It alleges that the defendants failed

to utilize their power and positions to correct unsafe and unsound practices of member associations. Subdivisions of that pleading present more particular allegations concerning First Progressive and Old Court, Merritt Commercial, First Maryland, and Community savings and loan associations.

Many issues have been joined by the defendants' answers.[4] There is a general denial, as permitted by Maryland Rule 2–323(d), which is analogous to the former general issue plea. Fifteen defenses are specially raised, including contributory negligence, assumption of risk, estoppel, waiver, unclean hands, and *in pari delicto*.

Defendants sued in the initial complaint filed a counterclaim on October 7, 1986. That counterclaim names DLR and the State of Maryland as counterdefendants, in addition to the named plaintiff, MDIF. That counterclaim alleges that DLR, acting through DSL and the Board of Savings and Loan Commissioners, had a "duty to obtain all material information about MSSIC's member associations and to share with MSSIC all material information...." It further alleges that DLR "[b]y virtue of its regular practice of transmitting information to MSSIC ... about MSSIC's member associations" assumed the duty to exercise reasonable care to obtain and transmit to MSSIC all material information about MSSIC's members. The counterclaim characterizes the alleged negligent breach of those asserted duties as primary and active, and requests indemnification. Alternatively, the counterclaim requests contribution from the counterdefendants if the counterclaimants are adjudged liable for the harm to MSSIC alleged in the complaint. Consequently, one of the theories embraced in the counterclaim is that negligence on the part of the State's agents

---

4. Individual defendants or groups of defendants have separate counsel. The record extract does not contain all of the answers filed. The defendants, however, have presented in the appendix to their brief as appellees the answer of one of the defendants as representative of all answers. The plaintiff has not questioned that answer's representative character.

was a concurrent proximate cause of the harm to MSSIC which is the subject of the MDIF complaint.[5]

The counterdefendants moved to dismiss the counterclaim of October 7, 1986, principally on the ground of a sovereign immunity bar.[6] When evaluating this motion to dismiss the circuit court treated all other counterclaiming defendants, whether they had joined in the October 7 counterclaim or not, as bound by the determination of the motion to dismiss the October 7 counterclaim. The circuit court held that the State was the real party in interest with respect to the claim asserted by MDIF and refused to dismiss as to the State and MDIF but did order DLR dismissed.[7] That court further held, in substance, that the counterclaim was purely defensive, in the nature of recoupment, and that recoupment was not barred by sovereign immunity.

An appeal in the names of MDIF and the State was noted from the order and a petition by those appellants for the writ of certiorari was filed. We granted the petition prior

---

5. The counterclaim also includes the now ubiquitous request for counsel fees. If the claim for counsel fees was intended to rest on contractual indemnification by MSSIC, assumed by MDIF, the counterclaim fails so to allege. On the face of that pleading the only theoretical basis for an award of counsel fees would be that the filing of the complaint was in bad faith or without substantial justification so that fees should be awarded under Rule 1–341. We are spared from determining, *infra,* whether a claim for counsel fees, so based, prevents application of defendants' recoupment theory because the request for fees has been withdrawn in this Court.

6. MDIF, as plaintiff, did not move to strike any of the special defenses set forth in the answers to the complaint, as originally filed or as amended. It is clear that the facts which the defendants hope to prove in support of the affirmative defenses are substantially similar to those alleged in the counterclaim. Inasmuch as negligence of the State is alleged in support of contribution or indemnification, the question arises whether contributory negligence bars a sovereign which is a plaintiff, but that issue is not before us. Compare Annot., *Contributory negligence as defense to action by state, United States, municipality, or other governmental unit,* 1 A.L.R.2d 827.

7. The dismissal of DLR is not questioned on this appeal and we intimate no opinion concerning that aspect of the order or its underlying reasoning.

to consideration of the appeal by the Court of Special Appeals.

I

■ Appellants submit that the challenged order is appealable under the collateral order doctrine. We have said that the requirements of that doctrine are:

"[T]he order must [(1)] conclusively determine the disputed question, [(2)] resolve an important issue[, (3) be] completely separate from the merits of the action, and [(4)] be effectively unreviewable on appeal from a final judgment." [*Clark v. Elza,* 286 Md. 208, 213, 406 A.2d 922, 925 (1979) (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351, 357–58 (1978) (footnote omitted)).]

Here the trial court clearly rejected any sovereign immunity bar to the counterclaim and thereby decided an important issue. Further, MDIF and the State contend that their absolute immunity prevents the defendants from so much as undertaking to demonstrate the alleged negligence of DSL and DLR personnel for recoupment purposes. The immunity, as asserted, would operate whether or not negligence or other breach of duty on the part of anyone, plaintiff or defendant, caused the financial collapse of MSSIC and is thus completely separate from the merits of the case.

■ With respect to whether the denial of the motion to dismiss the counterclaim would be effectively unreviewable after final judgment, MDIF and the State correctly emphasize that the policy underlying the State's sovereign immunity not only protects the public treasury but also protects the State and its instrumentalities from standing trial. This is illustrated by *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982), where the Court held appealable under the collateral order doctrine an order denying former President Nixon's motion for summary judgment because he asserted an absolute immunity, as President,

from the plaintiff's claim. Then, in *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Court entertained under the collateral order doctrine an appeal from the denial of a defendant's motion for summary judgment predicated on the qualified immunity of public officials exercising discretionary functions. *Mitchell* explained that

> [t]he entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. Accordingly, the reasoning that underlies the immediate appealability of an order denying absolute immunity indicates to us that the denial of qualified immunity should be similarly appealable: in each case, the district court's decision is effectively unreviewable on appeal from a final judgment. [*Id.* at 526–27, 105 S.Ct. at 2816.]

This Court recognized a similar rule in *Public Serv. Comm'n v. Patuxent Valley Conservation League,* 300 Md. 200, 477 A.2d 759 (1984), where an order permitting the individual commissioners of the Public Service Commission to be deposed in an administrative appeal from a Commission decision was immediately appealable because "the claim that Commission members should not be routinely subjected to extensive probing of their individual decisional thought processes would irretrievably be lost." *Id.* at 207, 477 A.2d at 763.

From the standpoint of being "effectively unreviewable" the erroneous rejection of sovereign immunity in bar of a claim is similar to the erroneous denial of the protection against standing trial for the second time which is embraced in the privilege against former jeopardy. In that instance, an order denying a double jeopardy defense is immediately appealable. *See Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). Likewise, an order improperly failing to recognize the bar of sovereign immunity to a claim would effectively escape review if the sovereign were forced to stand trial on that claim and await

final judgment before obtaining appellate review. Consequently, the collateral order doctrine permits immediate review here to determine whether the denial of the motion to dismiss the counterclaim erroneously deprived the State and its instrumentality, MDIF, of the protection of sovereign immunity.

## II

■ The defendants argue that their counterclaim is a shield and not a sword. The counterclaim seeks no monetary relief in excess of that which may be awarded to MDIF. In their brief and at oral argument the defendants have unequivocally renounced affirmative relief in excess of the plaintiff's claim. Defendants submit that, by initiating an action for money damages, a sovereign who has not by statute consented to suit against it, consents to a reduction of its claim for any amount payable to the defendants by a private party in the position of the sovereign which arises out of the same transaction or occurrence sued upon. This principle, which we shall call "recoupment," does not offend Maryland's sovereign immunity.

Initially we emphasize that the label of the pleading which the State sought to have dismissed is not controlling. One must analyze the issues raised by the defendants' counterclaim to determine if it is effectively a suit against the sovereign rather than a matter of defense. For example, where a plaintiff who was a builder sought specific performance of the contractual promise by the defendant, an owner, to mortgage realty in a specified amount reflecting the price of improvements, the owner's counterclaim which sought to reduce the amount of the mortgage by the cost of repairing construction defects raised a matter of defense which could properly have been raised by answer so that the owner need not have counterclaimed. *See Higgins v. Barnes*, 310 Md. 532, 530 A.2d 724 (1987). Similarly where the plaintiffs sought a declaratory judgment that certain county action was invalid and the county, by counterclaim, sought a declaration of validity, the purported

counterclaim was no more than an answer denying the relief requested in the complaint. *See East v. Gilchrist,* 293 Md. 453, 445 A.2d 343 (1982).

Although it has not been frequently addressed, the availability of a recoupment defense to a claim by Maryland, absent a statutory waiver of sovereign immunity, was implicit in *State v. Baltimore & O.R.R.,* 34 Md. 344 (1871), *aff'd,* 21 Wall. 456, 22 L.Ed. 678 (1875). There the State filed an *indebitatus assumpsit* action against the railroad for $500,000, representing one-fifth of the moneys received by the defendant for the transportation of passengers on its Washington branch from January 1, 1860, to January 1, 1870. The railroad filed the general issue and a special plea of set-off to which a demurrer was sustained.[8] Judgment on verdict for the defendant was reversed and a new trial awarded, but the rejection of the plea of set-off was affirmed. The Court reasoned as follows:

> This immunity belongs to the State by reason of her prerogative as a sovereign, and on grounds of public policy. Parties having claims or demands against her, must present them through another department of the Government—the Legislature—and cannot assert them by suit in the courts. For the same reason a right of set-off against the State does not exist. This is in the nature of a cross-suit, the object of which is to prevent circuity of action, and it does not exist where the subject matter of the set-off could not form the ground of an independent suit. It is a remedy conferred by statutes, which do not apply to the State, as she is not expressly embraced by their provisions.
>
> It is very clear that the subject matter of defense alleged in the plea cannot constitute a ground for *recoupment,* because the alleged cross-claim does not arise in any manner out of the contract or transaction which

---

8. Set-off was unknown to the common law and is a creature of statute. *See* 1 J. Poe, *Pleading and Practice in Courts of Common Law* § 613 (H. Tiffany 5th ed. 1925).

constitutes the cause of action, but is an entirely separate and distinct claim, having no connection therewith. [*Id.* at 374–76 (citations omitted).]

The clear implication of this reasoning is that, had the defense been one of recoupment, sovereign immunity would not have prevented the defendant from asserting it.

The interpretation is supported by commentators on Maryland common law pleading who have cited *State v. Baltimore & O.R.R.* for the proposition that set-off is not available against the sovereign and who similarly imply that recoupment would be available. *See* 1 J. Poe, *Pleading and Practice in Courts of Common Law* §§ 613–16 (H. Tiffany 5th ed. 1925); H. Ginsberg & I. Ginsberg, *Pleading at Law in Maryland,* at 122–23 (2d ed. 1937); A. Fisher, *Essentials of Maryland Pleading,* at 63–64 (J. Gorter & M. Fisher 2d ed. 1922).

Further, our interpretation is consistent with the argument made by the State in that case.[9] Maryland's counsel submitted in part:

A set-off is a cross-suit or action, and cannot be maintained against the State, for the same reasons which forbid an original suit. Whether the action be original or cross, it is equally an attempt to *coerce* the sovereign to do justice, and the principles of the common law do not permit a sovereign State to be thus subjected to coercion by its own tribunals. It is presumed to be always ready to do justice voluntarily. [34 Md. at 351.]

The State relies on *D.E. Foote & Co. v. Stanley,* 117 Md. 335, 82 A. 380 (1911) to demonstrate that sovereign immunity in Maryland precludes recoupment. The 1910 session of the General Assembly had enacted two bills imposing charges on fresh oysters when unloaded from vessels. This Court declared that the bill later signed was unconstitutional. *See D.E. Foote v. Clagett,* 116 Md. 228, 81 A. 511

---

**9.** Representing the State were Philip Francis Thomas, Severn Teackle Wallace, I. Nevitt Steele, and the then Attorney General, Issac D. Jones.

(1911). Commission merchants then challenged the earlier enactment as an unconstitutional burden on interstate commerce. By cross bill the State, which contended the charges were legitimate inspection fees, sued for fees due and owing from the plaintiffs. In their answer to the cross bill the plaintiffs sought credit for the charges paid under the statute previously invalidated. This Court held that the earlier of the two enactments was constitutional, a holding which the Supreme Court of the United States reversed. *D.E. Foote & Co. v. Stanley,* 232 U.S. 494, 34 S.Ct. 377, 58 L.Ed. 698 (1914). Addressing the matter of credits, this Court said:

> The claim of the [commission merchants] to set off, or recoup, against the amount claimed by the State in this case, the excess payment made by them in the former case, can not be allowed, not being provided for by any statute. To allow such a claim would infringe upon the immunity of the State from suit in its own Courts. "It must be presented to another department of the government, the legislature." *State v. B. & O.R.R.,* 34 Md. 374. [*D.E. Foote & Co. v. Stanley, supra,* 117 Md. at 347, 82 A. at 384.]

Essentially the commission merchants sought a refund for their account of moneys which had been demanded by the State as an ostensibly valid, public charge, which the commission merchants paid under a mistake of law and for which there was no refund statute. Under Maryland common law that kind of payment is considered to be voluntary and is not recoverable. The history of the Maryland voluntary payment rule was fully reviewed for the Court by Judge Singley in *Rapley v. Montgomery County,* 261 Md. 98, 274 A.2d 124 (1971), and was recently exemplified by *Washington Suburban Sanitary Comm'n v. Mitchell & Best,* 303 Md. 544, 495 A.2d 30 (1985) where we denied refunds of unauthorized connection charges imposed by the WSSC. Even though WSSC is a state agency, and enjoys sovereign immunity, *see Katz v. Washington Suburban Sanitary Comm'n,* 284 Md. 503, 397 A.2d 1027 (1979), we

predicated our holding on the absence of any statute altering the Maryland voluntary payment rule as to the WSSC connection charges, and not on the sovereign immunity of WSSC. Further, *Mitchell & Best* listed Maryland voluntary payment cases going back to 1846 (303 Md. at 572 n. 9, 495 A.2d at 44 n. 9), but none of those cases rested on sovereign immunity. Consequently, to the extent that *D.E. Foote v. Stanley, supra,* employed a sovereign immunity rationale to reject recoupment by the commission merchants for moneys voluntarily paid by them under the invalid law, it is disapproved.

Recoupment against Maryland was allowed in *Maryland Port Admin. v. SS Am. Legend,* 453 F.Supp. 584 (D.Md. 1978). In that case the Maryland Port Administration (MPA), a State agency, sued in admiralty for property damage against, *inter alia,* the respective owners of two ships who, in turn, counterclaimed. MPA moved for summary judgment on the counterclaims asserting the bars both of sovereign immunity and of the eleventh amendment. Judge Harvey denied summary judgment to MPA on the following reasoning:

> The Court would note at the outset that by filing suit as a plaintiff, a state waives its immunity and Eleventh Amendment protection with respect to a counterclaim arising out of the same event which is the subject of the state's claim. This type of waiver, however, is limited to a counterclaim asserted defensively in recoupment, for the purpose of defeating or diminishing a state's recovery, but not to a counterclaim asserted for the purpose of obtaining an affirmative judgment. [*Id.* at 590 (citation omitted).]

With respect to the national sovereign, it seems to be settled that the United States of America, when suing as a plaintiff in the federal courts, is subject to recoupment without regard to any statutory waiver of sovereign immunity. *See United States v. United States Fidelity & Guar. Co.,* 309 U.S. 506, 511, 60 S.Ct. 653, 656, 84 L.Ed. 894, 898 (1940); *Bull v. United States,* 295 U.S. 247, 262, 55 S.Ct.

695, 700, 79 L.Ed. 1421, 1429 (1935) (assessment of tax liability equated with the Government's initiating summary proceeding for collection); *Frederick v. United States,* 386 F.2d 481, 488 (5th Cir.1967); *Federal Deposit Ins. Corp. v. Shinnick,* 635 F.Supp. 983, 985 (D.Minn.1986); *United States v. Yonkers Bd. of Ed.,* 594 F.Supp. 466, 469 (S.D. N.Y.1984); *Federal Sav. & Loan Ins. Corp. v. Williams,* 599 F.Supp. 1184, 1209 (D.Md.1984); *In re Am. Export Lines, Inc.,* 568 F.Supp. 956, 961 (S.D.N.Y.1983); *In re Franklin Nat'l Bank Sec. Lit.,* 445 F.Supp. 723, 737 (E.D. N.Y.1978); *United States v. Frank,* 207 F.Supp. 216, 221 (S.D.N.Y.1962).

*Bull v. United States, supra,* illustrates the rationale of the federal cases. There a partner in a firm, the annual accounting period of which was the calendar year, died in February. Under the partnership agreement the decedent's estate continued to share in profits through December. The Commissioner of Internal Revenue collected estate tax based on those profits earned by the firm after the decedent's death which were distributed to the estate. Later the Commissioner demanded income tax on that same distribution. The estate paid the income tax and then sued in the Court of Claims for a refund of the amount which should have been credited against the income tax liability for the estate tax erroneously assessed and collected. The Court of Claims held that limitations barred any refund but the Supreme Court reversed, saying:

"No direct suit can be maintained against the United States. But when an action is brought by the United States, to recover money in the hands of a party who has a legal claim against them, it would be a very rigid principle, to deny to him the right of setting up such a claim in a court of justice, and turn him round to an application to Congress. If the right of the party is fixed by the existing law, there can be no necessity for an application to Congress, except for the purpose of remedy. And no such necessity can exist, when this right can properly be set up by way of defence, to a suit by the

United States." If the claim for income tax deficiency had been the subject of a suit, any counter demand for recoupment of the overpayment of estate tax could have been asserted by way of defense and credit obtained notwithstanding the statute of limitations had barred an independent suit against the Government therefor. This is because recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely. [*Id.* at 262, 55 S.Ct. at 700–701 (footnotes omitted) (quoting *United States v. Ringgold,* 8 Pet. 150, 163–64, 8 L.Ed. 899, 903–04 (1834)).]

That sovereign immunity does not preclude recoupment in defense of a sovereign's claim has also been recognized by federal and state courts in cases involving states other than Maryland. *See, e.g., In re Monongahela Rye Liquors, Inc.,* 141 F.2d 864 (3d Cir.1944); *United States v. Mottolo,* 605 F.Supp. 898 (D.N.H.1985); *Kansas Bd. of Regents v. Holt,* 8 Kan.App.2d 436, 659 P.2d 836 (1983); *Edwards v. Commonwealth Dep't of Public Welfare,* 34 Pa.Commw. 622, 384 A.2d 293 (1978); *State v. Crabtree,* 32 Conn.Supp. 322, 353 A.2d 796 (1975); *State v. Town of Grants,* 69 N.M. 145, 364 P.2d 853 (1961); *State v. Martin,* 347 S.W.2d 809 (Tex.Civ. App.1961); *Commonwealth v. Berks Co.,* 364 Pa. 447, 72 A.2d 129 (1950); *State v. Bucholz,* 169 Minn. 226, 210 N.W. 1006 (1926); *State v. Arkansas Brick & Mfg. Co.,* 98 Ark. 125, 135 S.W. 843 (1911); *McCandlish v. Commonwealth,* 76 Va. 1002 (1882). And *see generally* 14 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3654, at 202 and n. 25 (2d ed. 1985); Note, *Governmental Immunity from Counterclaims,* 50 Colum.L.Rev. 505 (1950); Note, *Counterclaims against a Sovereign,* 36 Harv.L.Rev. 871 (1923).

The State, however, submits that the opinions of federal courts and of courts from other states are not persuasive with respect to Maryland's sovereign immunity because in this State sovereign immunity was repealed by ch. 53 of the

Acts of 1786 and then revived or reinstated through the repeal of the 1786 enactment by ch. 210 of the Acts of 1820. This Court has cited that history as one reason why any abrogation of sovereign immunity must be by legislation and not by judicial decision. *See Calvert Assocs. v. Dep't of Employment & Social Servs.*, 277 Md. 372, 376, 357 A.2d 839, 841 (1976). We have also said that sovereign immunity is a defense to a claim asserted against the State or one of its agencies, unless the immunity has been waived by statute, expressly or by necessary inference, and funds are or can be available for satisfaction of a judgment against the State. *See Board of Trustees of Howard Community College v. John K. Ruff, Inc.*, 278 Md. 580, 586, 366 A.2d 360, 362–63 (1976). In the case at hand the State argues, extrapolating from these statements, that its motion should have been granted because no statute waives sovereign immunity as to recoupment. But the principle for which the foregoing federal and state cases stand is that recoupment lies in reduction of a sovereign's claim even if the sovereign has not waived the traditional immunity by statute. No statute is required. By presenting the claim the State subjects itself to diminution of recovery by way of recoupment.

The State finds particular comfort in that part of FI § 10–121(a) which specifies that MDIF "may raise the defense of sovereign immunity in any action." From this the State gleans that recoupment defenses infringe MDIF's sovereign immunity and are not permitted. We need not concern ourselves, however, with whether MDIF's statutorily declared sovereign immunity can, constitutionally or otherwise, be broader than that enjoyed by the State and whether FI § 10–121(a) admits of recoupment. This is because the recoupment claimed in the instant matter does not rest on acts or omissions of MDIF employees; rather, it rests on acts or omissions of other state employees in

DSL.[10] Whatever the breadth of the statutorily created or confirmed immunity applicable to MDIF might be, we hold only that § 10–121(a) does not apply to prevent these defendants from raising against the State acts or omissions of employees in an agency other than MDIF which occurred prior to the creation of MDIF.

### III

The State further submits that the instant case does not present facts to which the recoupment concept is properly applied because the transaction and the parties involved in the complaint are different from those involved in the recoupment.

### A

■ Because recoupment in the context under consideration is limited to the transaction or occurrence on which the sovereign sues, the sovereign necessarily determines the allowable scope of recoupment by the scope of its suit. Under Maryland Rule 2–212, "[a]ll persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative any right to relief in respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and if any question of law or fact common to all defendants will arise in the action." MDIF"s complaint utilized this rule. In essence the complaint embraces a series of occurrences preceding MSSIC's insolvency and concludes that breach of duty by the defendants caused the insolvency. The "coun-

---

**10.** The State has also referred to an interlocutory trial court order of November 19, 1986 in *Maryland Deposit Ins. Fund Corp. v. Billman,* Case No. 11073 in the Circuit Court for Montgomery County. There MDIF in its capacity as receiver for a defunct savings and loan association sued certain former officers and directors of that association who in turn counterclaimed, alleging waste of corporate assets committed by MDIF in its administration of the receivership. The circuit court rejected a recoupment argument and dismissed the counterclaim. We intimate no opinion on that holding which addressed conduct of MDIF.

terclaim" also embraces many of the same series of occur-
rences preceding MSSIC's insolvency and concludes that it
was proximately caused, at least in part, by the State's
negligent acts and omissions. Relative to the complaint,
the recoupment arises out of the same transaction.

The rule which we apply is not unlike that utilized by the
United States Supreme Court under former Federal Equity
Rule 30 in *Moore v. New York Cotton Exch.*, 270 U.S. 593,
46 S.Ct. 367, 70 L.Ed. 750 (1926). That rule provided that
"[t]he answer must state ... any counterclaim arising out
of the transaction which is the subject-matter of the
suit...." The plaintiff complained that the defendants
violated the antitrust laws in refusing to furnish the plain-
tiff the prices of transactions on a cotton exchange while
the defendants sought an injunction to prevent the plain-
tiffs from purloining that data. The Court said:

> "Transaction" is a word of flexible meaning. It may
> comprehend a series of many occurrences, depending not
> so much upon the immediateness of their connection as
> upon their logical relationship. [*Id.* at 610, 46 S.Ct. at
> 371.]

And *see Rothensies v. Electric Storage Battery Co.*, 329
U.S. 296, 299, 67 S.Ct. 271, 272, 91 L.Ed. 296, 299 (1946)
(recoupment "permit[s] a transaction which is made subject
of suit by a plaintiff to be examined in all its aspects, and
judgment to be rendered that does justice in view of the one
transaction as a whole").

## B

The State also presents a variety of arguments, the
common denominator of which treats the respective parts of
the State government as separate legal entities. Thus, we
find the State arguing that

—the claim initially sued on is that of MSSIC which is
innocent of any wrong;

—MSSIC is neither DSL nor DLR;

—MDIF, the complainant, is neither DSL nor DLR;

—MDIF is not the State;

—because the action is brought by MDIF, a counterclaim based on wrongs by the State cannot be a recoupment against MDIF; and

—MDIF is not liable for the torts of its principal, the State.

Perhaps the clearest approach to the analysis of the foregoing variations on the separate entities theme is first to present our view of the legal effect of the relationships.

The unusual aspect of this case is that the General Assembly by a special act created a corporation, MDIF, as a State agency and then merged MSSIC into it. Under the pressures of the 1985 financial crisis in the savings and loan industry this technique was an efficient legal mechanism for the State to accept MSSIC's insurance liabilities in an effort to restore public confidence and at the same time to acquire MSSIC's assets. As a result of this merger the claim against the defendants was assigned to MDIF.

As a corporation MDIF may for some purposes be treated as a separate legal entity from the State and we shall assume that it is to be treated separately here. But the corporation is an agent of the State. *See Keifer & Keifer v. Reconstruction Fin. Corp.*, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939); *Sloane Shipyards Corp. v. United States Shipping Bd. Emergency Fleet Corp.*, 258 U.S. 549, 42 S.Ct. 386, 66 L.Ed. 762 (1922). Consequently, the former MSSIC claim is held by MDIF as agent for a fully disclosed principal, the State, for whose benefit the action is brought. In this sense the circuit court correctly described the State as the real party in interest in this action brought in the name of MDIF.

This analysis confronts us with two questions. First, in an action by MDIF on the former MSSIC claim is MDIF, as assignee, subject to defenses which are maintainable against it but not against MSSIC? Second, is MDIF, as an agent, subject to defenses which are based solely on the conduct of the State, its principal? Under traditional principles the answer to both of these questions is yes.

From the standpoint of the defendants, MDIF's owner-ship of the former MSSIC claim does not insulate the claim from defenses good against the assignee and, where, as here, the assignee is an agent for a disclosed principal, the assignment from an innocent party does not insulate the assignee-plaintiff-agent from defenses good against the dis-closed principal. Professor Corbin succinctly states the analysis.

In a suit by an assignee, the counterclaim, set-off, or recoupment of which the defendant wishes to make use may arise either (1) out of a transaction between the defendant and the assignee, (2) out of some contract by the assignee of which the defendant is beneficiary, or (3) out of some transaction between the defendant and the assignor. Questions arising in the first two classes are not peculiar to the law of assignment; counterclaims in such cases are available against the plaintiff on the same terms that they would be available if he were not an assignee at all. [4 A. Corbin, *Corbin on Contracts* § 896, at 595–96 (1951) (footnote omitted).]

Thus, where D was indebted to an individual, T, and T assigned the claim to a partnership, P, of which T was a member, D was entitled to set-off in an action by P on the claim acquired by T defenses which D had against P. *See Winchester v. Hackley,* 2 Cranch 342, 2 L.Ed. 299 (1804). And *see Pates v. St. Clair,* 52 Va. 22 (1854); Restatement (Second) Contracts § 336(4) (1981) ("An assignee's right against the obligor is subject to any defense or claim arising from his conduct...."); Restatement Contracts § 167(2) (1932); 3 Jaffe, *Williston on Contracts* § 432, at 191 (3d ed. 1960).

■ With respect to the use of defenses against an agent Restatement (Second) Agency § 368 (1958) states that "[i]n an action brought by an agent in his own name on behalf of his principal, the other party to the contract has all the defenses which would be available to him if the action were brought by the principal," with certain excep-tions not here relevant. *District Agency Co. v. Suburban*

*Delivery Serv., Inc.,* 224 Md. 364, 167 A.2d 874 (1961) illustrates the principle. Under a liability policy issued to the delivery company the insured was authorized to pay certain claims for loss or damage to goods and the insurer was to reimburse the insured for those payments. The insurance broker who had placed the coverage sued the delivery company for premiums, part of which the broker had paid to the insurer and part of which were due but unpaid. The delivery company, which had pled only the general issue, sought to reduce the broker's claim by the debt to it from the insurer under the claims payment arrangement. This Court, through Chief Judge Brune, analyzed the problem disjunctively. One holding was that if the broker were suing as agent for the insurer the defense made by the delivery company satisfied common law pleading requirements for recoupment. The defendant was entitled to reduce the agent's claim by the principal's debt to the defendant. *See also Intra–Mar Shipping (Cuba) S.A. v. John S. Emery & Co.,* 11 F.R.D. 284 (S.D. N.Y. 1951); *Holden v. Rutland R.R.,* 73 Vt. 317, 50 A. 1096 (1901). It follows that MDIF, viewed as a separate legal entity, is subject to a defense good against its principal, even if its assignor were free of that defense.

 In support of its argument that conduct of the assignee which antedated the assignment may not be used as a defense to an action brought by the assignee on the assigned claim, the State relies on *Federal Deposit Ins. Corp. v. Dempster,* 637 F.Supp. 362 (E.D.Tenn.1986). The author of the *Dempster* opinion subsequently applied the same reasoning in *Federal Deposit Ins. Corp. v. Berry,* 659 F.Supp. 1475 (E.D.Tenn.1987). Both cases involved insolvent banks, the deposits in which had been insured by the FDIC. As insurer, the FDIC acquired certain assets of the banks including potential causes of action against the banks' officers and directors. When the FDIC sued the officers and directors, they asserted that the losses of the institution were caused by negligence on the part of bank examiners and others employed by the FDIC. Giving a

very narrow reading to § 336 of Restatement (Second) of Contracts *Dempster* concluded that the rule therein stated "applies only in instances where the assignee is a party to the underlying contract or where the conduct of the assignee occurs subsequent to the initial assignment but prior to a reassignment." 637 F.Supp. at 366. The court also referred to the general rule that "the assignee steps into the shoes of the assignor upon assignment of the interest and takes the assignment subject to the defenses assertable against the assignor." *Id.* at 365–66. The court then espoused the view that if actions by the assignee, FDIC, prior to the assignment could be used against it as defenses

the above principle of assignment, would not be appropriate. The assignee would be subject to actions not assertable against the assignor and therefore would have additional characteristics not applicable to the assignor and would not be, as it were, stepping into the shoes of the assignor or taking on the characteristics of the assignor. [*Id.* at 366.]

We are unpersuaded by the reasoning of *Dempster* and of *Berry,* both *supra.* Those opinions are contrary to the Restatement, Corbin and Williston. Further, those cases seem to rest on the belief that the rule whereby an assignee takes subject to defenses good against the assignor states the universe of rules applicable to assignments, whereas that rule does not undertake to describe, one way or the other, the effect of antecedent defenses against the assignee.

## IV

■■■ We have seen that, as a matter of the substantive law of sovereign immunity, the recoupment concept permits matters of defense to be raised against the sovereign and that the concept applies when an agent sues on the sovereign's behalf on an assigned claim from an innocent party. There remains to be considered whether the recoupment concept embraces contribution or indemnity.

Our concern on this appeal under the collateral order doctrine is with the State's contention that the "counterclaim" infringes sovereign immunity and not with the merits of the defendants' argument under the substantive law of contribution or indemnity.[11] The defendants, apparently anticipating some evidence of negligence on the part of the State, have pleaded seemingly every conceivable legal effect thereof. Under their answer, which includes a contributory negligence special plea, the defendants apparently will contend that the claim against them is totally barred. The "counterclaim" for contribution undertakes to use the same proof to support a contention that there should be a pro rata reduction of the State's claim. Of concern here is whether sovereign immunity prevents the defendants from attempting to argue for a pro rata reduction if there is negligence.

The State correctly points out that, had MSSIC sued the defendants, or had MSSIC been acquired by a private corporation which asserted the same claim, these defendants would not have been able to recover on a third-party claim for contribution against the State. Because MSSIC or a private corporation could not have sued the State directly, the defendants would not have been entitled to contribution in that hypothetical action. *See, e.g., Baltimore Transit Co. v. Schreifer*, 183 Md. 674, 39 A.2d 858 (1944). In sum the State contends that the substantive right to contribution is derivative and that the defendants seek to do indirectly, by recoupment, what could not be done directly.

As a substantive matter sovereign immunity does not mean that conduct which is tortious if committed

---

11. For example, in its reply brief the State argues that its activities through DSL and DLR do not give rise to any duty which is enforceable by the defendants. This issue is not before us on this appeal and it was not even briefed by the defendants. The "no duty" argument in support of dismissal of the "counterclaim" is not predicated on sovereign immunity and its concomitant right to avoid standing trial. That issue is not within the collateral order doctrine and is unappealable at this time.

by a private individual is not tortious when committed by the sovereign. If the law were otherwise, a statutory waiver of sovereign immunity would be meaningless because removal of the immunity bar would leave no underlying cause of action to assert. Consequently, although immunity would have barred liability for the torts alleged in the "counterclaim" when committed, the State acquired and now asserts the injured party's claim. This permits the defensive use, by way of recoupment, of the underlying conduct which allegedly has always been tortious, even though never affirmatively actionable.

As a procedural matter no third-party claim is required here. By bringing the action for its account through its agent, the State has put itself in the position whereby the defendants may assert, as recoupment, that the legal effect of any concurrent State negligence is a pro rata reduction. Indemnity and contribution by way of recoupment against the claim of a sovereign have been allowed against a motion to dismiss in *United States v. Mottolo, supra,* 605 F.Supp. 898, *Federal Sav. & Loan Ins. Corp. v. Williams, supra,* 599 F.Supp. 1184, and in *In re Am. Export Lines, Inc., supra,* 568 F.Supp. 956.

ORDER OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY DENYING THE MOTION TO DISMISS IS AFFIRMED. COSTS TO BE PAID BY THE STATE OF MARYLAND.