572 A.2d 1092

Michael FINCI

v.

AMERICAN CASUALTY COMPANY OF READING,
PENNSYLVANIA, et al.

AMERICAN CASUALTY COMPANY OF
READING, PENNSYLVANIA

v.

STATE of MARYLAND DEPOSIT INSURANCE FUND
CORPORATION, et al.

No. 840, Sept. Term, 1989.

Court of Special Appeals of Maryland.

May 2, 1990.

474

Richard A. Finci, Pickett, Houlon & Berman, on the brief, Hyattsville, for appellant, Michael Finci.

H. Emslie Parks, Parks, Hansen & Ditch, on the brief, Towson, for American Cas. Co.

Timothy C. Russell, Thomas C. Schaufelberger, Douglas C. McAllister and Drinker, Biddle & Reath, Washington, D.C., for appellant.

Neil J. Dilloff, Jonathan D. Smith and Piper & Marbury, J. Joseph Curran, Jr., Atty. Gen., Dennis M. Sweeney, Deputy Atty. Gen., on the brief, Baltimore, for M.D.I.F.

Argued before ROBERT M. BELL, WENNER and CATHELL, JJ.

WENNER, Judge.

This is yet another appeal arising from the 1985 savings and loan crisis in Maryland. The matter now before us was spawned by two lawsuits which were later consolidated, each of which sought amounts alleged to be owed under a directors' and officers' liability policy (the D & O Policy) issued by appellant, American Casualty Company of Reading, Pennsylvania (American Casualty), to First Maryland Savings & Loan, Inc. (First Maryland). In November of 1985, it was determined that First Maryland was in serious financial condition. As a result, the Circuit Court for Montgomery County appointed the State of Maryland De-

posit Insurance Fund (MDIF) as conservator for First Maryland,[1] and subsequently as First Maryland's receiver.[2]

Both of the underlying lawsuits arose from a prior action filed by First Maryland and MDIF against several defendants (the Seidel Action), including appellant, Michael Finci, a former director of First Maryland.[3] Prior to trial in the Seidel Action, Finci settled with First Maryland and MDIF for $330,000.[4] First Maryland and MDIF later obtained a multi-million-dollar judgment against the remaining defendants.[5]

Following the entry of judgment in the Seidel Action, First Maryland and MDIF, and Michael Finci, each filed lawsuits against American Casualty. Finci, as a former

---

1. Judicial authority for the appointment of a conservator is granted pursuant to Md.Fin.Inst.Code Ann. § 9–701(b) (1986 Repl.Vol. & Supp.1989). MDIF "has an absolute right to be appointed conservator or receiver of a savings and loan association insured by it." Md.Fin. Inst.Code Ann. § 9–709 (1986 Repl.Vol. & Supp.1989).

2. A court may appoint a receiver for a savings and loan association pursuant to Md.Fin.Inst.Code Ann. § 9–708(b) (1986 Repl.Vol. & Supp.1989). *See also* Md.Fin.Inst.Code Ann. § 9–709 (1986 Repl.Vol. & Supp.1989) (granting MDIF the absolute right to be appointed receiver of a savings and loan association which it has insured).

3. The prior litigation occurred in State of Maryland Deposit Insurance Fund Corp. as Receiver for First Maryland Savings and Loan, Inc., et al., v. Julian M. Seidel, et al., (Cir.Ct.Montgomery County, Case No. 13408).

4. We are informed by MDIF's brief that Finci was to have paid the $330,000 settlement in installments. Finci chose, however, to pay the entire amount in one payment and, thus, was given a $5,000 discount, paying $325,000.

5. The Seidel Action was filed by First Maryland and MDIF against eight former directors or officers of First Maryland, including Finci, as well as various other defendants. Finci was sued for civil conspiracy, negligent breach of fiduciary duty, gross negligence and waste. Finci notified American Casualty and demanded that American Casualty provide him with a defense and indemnify him for any successful claims asserted against him in the Seidel Action. As we have already explained, Finci settled on the claims against him prior to trial. First Maryland and MDIF obtained judgments against the remaining defendants in the Seidel Action.

director of First Maryland, sought to recover under the D & O Policy for his $330,000 settlement plus attorney's fees. First Maryland and MDIF sought to recover the full amount of coverage available under the D & O Policy.[6] Those two lawsuits were consolidated by the circuit court.

This appeal is from an order of the Circuit Court for Baltimore City which granted First Maryland and MDIF's motion for partial summary judgment on the issue of priority to the proceeds from the D & O Policy. In addition, the circuit court granted judgment in favor of MDIF and against American Casualty in the amount of $2.995 million.[7]

Upon appeal, American Casualty asserts that:

    I.   All claims based on the Seidel Action are excluded by both the "Insured vs. Insured" and "Regulatory" exclusions contained in the D & O Policy.

    II.   Maryland public policy does not render the exclusions unenforceable.

    III.   In the absence of a factual record, the grant of summary judgment was improper as to the remaining defenses.[8]

In addition, Finci asserts that:

    IV.   The circuit court erred in granting appellees' motion for partial summary judgment as to priority of the policy proceeds.

---

**6.** The D & O Policy provided for a $3 million dollar aggregate limit of liability, less a $5,000 deductible, for total coverage in the amount of $2,995,000.

**7.** The judgment was for the entire amount of the coverage available under the D & O Policy. *See supra* n. 4. Consequently, no proceeds remained under the D & O Policy to satisfy Finci's claim.

**8.** Summary judgment had previously been granted to First Maryland and MDIF on the defenses of the "personal profit" exclusion and the "dishonesty" exclusion in the D & O Policy, as well as the defense for a "wrongful act" and the "intentional wrongdoing or fraud defense." Those defenses, however, pertained to parties who are not involved in the case *sub judice;* hence, we shall not address those issues upon this appeal.

V.   The circuit court erred in denying as moot Finci's second motion for summary judgment.

We have carefully reviewed the record before us as well as the statutes involved and their legislative history. From all of this, we conclude that the "Insured vs. Insured" and "Regulatory" exclusions in the D & O policy are contrary to the public policy of the State of Maryland and, thus, are void and unenforceable. Moreover, from our examination of the various statutes involved and their legislative history, we conclude that the legislature intended to give judgments obtained by the State, and by MDIF as its agent, priority over all other judgments. Md.Fin.Inst.Code Ann. § 10–120(b) (1986 Repl.Vol. & Supp.1989). Consequently, the order of the circuit court granting judgment in favor of MDIF and granting partial summary judgment to First Maryland and MDIF on the issue of priority to the proceeds of the D & O Policy was properly granted.

### Standing

■ We shall begin our discussion with American Casualty's assertion that MDIF does not have standing to sue under the D & O Policy. We see it somewhat differently.

■ MDIF is an agent of the State. *State v. Hogg,* 311 Md. 446, 467, 535 A.2d 923 (1988). In its capacity as conservator and receiver of First Maryland, MDIF becomes the "real party in interest" in an action brought in the name of MDIF. *See Id.*

Moreover, as conservator, MDIF has statutory authority to "exercise the powers, rights, and privileges of the officers, directors, members, and stockholders of the savings and loan association." Md.Fin.Inst.Code Ann. § 9–702(b) (1986 Repl.Vol. & Supp.1989). MDIF is also authorized to exercise these powers in its capacity as receiver. Md.Fin. Inst.Code Ann. § 9–708(c) and (d) (1986 Repl.Vol. & Supp. 1989). Accordingly, we hold that MDIF, in its capacity as conservator and receiver of First Maryland, has standing to bring suit under the D & O Policy issued by American Casualty.

## Summary Judgment

At the outset, we note that "[a]ny party may file at any time a motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law." Md. Rule 2–501(a). The summary judgment proceeding is not a substitute for a trial; rather, it is a proceeding to determine whether a trial is required to resolve a factual controversy. *Foy v. Prudential Insurance Co.*, 316 Md. 418, 422, 559 A.2d 371 (1989). The trial court, in ruling on the motion for summary judgment, must determine whether the pleadings, depositions, answers to interrogatories, admissions, and affidavits on file show that there is no genuine dispute as to any material fact, and whether the movant is entitled to judgment as a matter of law. Md. Rule 2–501(e). *See also Syme v. Marks Rentals, Inc.*, 70 Md.App. 235, 238, 520 A.2d 1110 (1987).

Once the moving party establishes sufficient grounds for summary judgment, the party opposing the motion must show "with some precision" that there exists a genuine dispute as to a material fact. *See Foy, supra,* 316 Md. at 422, 559 A.2d 371. Maryland courts have defined a "material fact" as "a fact the resolution of which will somehow affect the outcome of the case." *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985). If the facts are susceptible to more than one inference, all inferences must be resolved against the moving party. *Id. See also Syme, supra,* 70 Md.App. at 239, 520 A.2d 1110. Moreover, where several inferences may be drawn, summary judgment is not proper, but rather, the dispute must be submitted to the trier of fact. *King, supra,* 303 Md. at 111, 492 A.2d 608. *See also Foy, supra,* 316 Md. at 422–423, 559 A.2d 371.

## Discussion

Construction of insurance contracts in Maryland is governed by several well settled principles. *See Pacific Indemnity v. Interstate Fire & Casualty,* 302 Md. 383, 388,

488 A.2d 486 (1985). An insurance contract is measured by its terms unless contrary to a statute, a regulation, or public policy. *Id.* The contractual provisions of an insurance policy are based upon their plain and ordinary meaning. *See Globe American Casualty v. Chung,* 76 Md.App. 524, 532, 547 A.2d 654 (1988), *cert. granted,* 314 Md. 508, 551 A.2d 874 (1989). In order to determine the intention of the parties to the insurance contract, the court must consider the contract as a whole. *Pacific Indemnity, supra,* 302 Md. at 388, 488 A.2d 486. In addition, where the language of the contract is clear and unambiguous, courts may construe the contract as a matter of law. *Id.* at 389, 488 A.2d 486.

In the case at hand, the D & O Policy, issued by American Casualty to First Maryland, contains several exclusions that purport to limit the liability coverage provided by American Casualty. Endorsement No. 7 (hereinafter the "Regulatory exclusion") of the D & O Policy provides that:

> the Insurer shall not be liable to make any payment of Loss in connection with any claim made against the Directors of [sic] Officers based upon or attributable to: any action or proceeding brought by or on behalf of the Federal Deposit Insurance Corporation, the Federal Savings & Loan Insurance Corporation, any other depository insurance organization, the Comptroller of the Currency, the Federal Home Loan Bank Board, or any other national or state regulatory agency (all of said organizations and agencies hereinafter referred to as "Agencies"), including any type of legal action which such agencies have the legal right to bring as receiver, conservator, liquidator or otherwise, whether such action or proceeding is brought in the name of such Agencies or by or on behalf of such Agencies in the name of any other entity or solely in the name of any Third Party.

In addition, Endorsement No. 9 (hereinafter the "Insured

vs. Insured exclusion") of the D & O Policy provides that:

the Insurer shall not be liable to make any payment for Loss as defined in Clause 1(d) hereof, which is based upon or attributable to any claim made against any Director or Officer by any other Director or Officer or by the Institution defined in Clause 1(a) of the Policy (hereinafter called "Institution"), except for a shareholders derivative action brought by a shareholder of the Institution other than an Insured.

American Casualty contends that the "Regulatory exclusion" and the "Insured vs. Insured exclusion" preclude coverage of all claims based upon the Seidel Action.

An insurer is entitled to limit the coverage under the insurance policy, provided that the exclusion is made in plain and conspicuous language. *See Burns v. International Insurance Co.*, 709 F.Supp. 187, 190 (N.D.Cal.1989) (held that the explicit exclusions in a directors' and officers' liability policy of a defunct savings and loan association were permissible). *See also Huffman v. Aetna Life & Casualty Co.*, 337 Pa.Super. 274, 486 A.2d 1330, 1334 (1984) (held that an insurance policy can be drafted with explicit exclusions). By including an explicit exclusion in the policy the insurer limits the amount of risk that it assumes, *Burns, supra,* at 190, and the court will ordinarily uphold the explicit exclusions. *See Huffman, supra,* 486 A.2d at 1334 (held that the court will uphold the plain meaning of explicit exclusions since "a policyholder cannot reasonably expect unlimited coverage in the face of an explicit unambiguous limitation").

We have held that "policy provisions narrowing the insurer's liability in a manner not inconsistent with statutory requirements is valid and permissible." *Lord v. Maryland Auto Insurance Fund,* 38 Md.App. 374, 377, 381 A.2d 23 (1977) (held that limitations under an automobile insurance policy were not inconsistent with statutory requirements and, therefore, were permissible). Limitations on insurance coverage, however, must be consistent with public policy.

*See Burns, supra,* at 190. In the case *sub judice,* we conclude that the D & O Policy exclusions, attempting to limit American Casualty's liability, are not consistent with the statutory requirements or the public policy of Maryland.

### Public Policy

■ MDIF was created in 1985 by a special session of the legislature in response to the savings and loan crisis in Maryland.[9] The legislation is codified as Title 10 of the Financial Institutions Article of the Annotated Code of Maryland. MDIF was established as a nonstock, nonprofit corporation. *See Chevy Chase, supra,* 306 Md. at 393, 509 A.2d 670. As previously mentioned, MDIF is an agent of the State and, as such, any action brought by MDIF is ultimately for the benefit of the State. *Hogg, supra,* 311 Md. at 467, 535 A.2d 923. *See also* Md.Fin.Inst.Code Ann. § 10–102 (1986 Repl.Vol. & Supp.1989) (establishing MDIF in the State Department of Licensing and Regulation).

Among the purposes for which MDIF was established is to insure the savings accounts of member associations and to reimburse savings account holders for losses incurred upon the liquidation of a member association. Md.Fin.Inst. Code Ann. § 10–110(a)(2)(i) and (iii) (1986 Repl.Vol. & Supp. 1989).[10] In order to fulfill its statutory purpose, MDIF has been given broad powers and duties, particularly in its

---

**9.** For a summary of the creation of MDIF, see *Chevy Chase Savings and Loan v. State,* 306 Md. 384, 392–397, 509 A.2d 670 (1986). For an account of the 1985 savings and loan crisis in Maryland, see W. Preston, Report of the Special Counsel on the Savings and Loan Crisis (1986).

**10.** The statute provides in its entirety:
(2) The Fund Director shall administer the State of Maryland Deposit Insurance Fund for the purposes of:
(i) Insuring the savings accounts of member associations.
(ii) Purchasing capital instruments, including net worth certificates, issued by a member association to enable that member association to qualify for federal insurance;
(iii) Reimbursing savings account holders for loss incurred upon liquidation of a member association, up to the amount of insurance on any savings account;

function as conservator or receiver of failed savings and loan associations. *See* Md.Fin.Inst.Code Ann. § 9–701 *et seq.* (1986 Repl.Vol. & Supp.1989.) Pursuant to its statutory powers, MDIF, as receiver, may marshall and collect the assets and exercise all of the powers necessary to liquidate the business affairs of a failed savings and loan association. Md.Fin.Inst.Code Ann. § 9–708(d) (1986 Repl. Vol. & Supp.1989). That is precisely the situation in the case *sub judice,* where MDIF has been appointed conservator and receiver of First Maryland.

---

(iv) Providing funds for liquidity to or issuing obligations against the Fund for, or acquiring securities of or from a member association, affiliate, or acquiring entity in an emergency as determined by the Fund Director or to facilitate an acquisition, consolidation, merger, or transfer of assets and obligations;

(v) Making capital contributions to member associations or entities acquiring, consolidating, or merging with, or acquiring assets and assuming obligations of, member associations, if the Fund Director determines that:

1. The amount of the capital contribution is substantially less than the cost that the Fund would incur if the member association were liquidated, including the cost of reimbursing each savings account holder in the insured amount of each savings account holder's deposit in the liquidated member association; and

2. The making of the capital contribution is necessary to facilitate the acquisition, consolidation, or mergers or transfers of assets and obligations;

(vi) Paying to a receiver of any member association in receivership under § 9–708 of this article at the time of final distribution of the assets of the member association a sum equal to the amount that the insurance liability of the Fund has been reduced by reason of withdrawals made during the pendency of a conservatorship or receivership of the member association under any form of hardship withdrawal plan or partial distribution of assets approved by the court having jurisdiction over the receivership of the member association; and

(vii) Making payments to any insured institution that assumes savings deposit or share account liabilities of a savings and loan association in receivership in an amount up to the total amount of the liabilities assumed and with respect to any specific deposit or share account not in excess of the amount of insurance on the deposit or share account, and agreeing to indemnify any insured institution that assumes these liabilities against any further liabilities to the extent deemed appropriate by the Fund Director but not to exceed the assets of the Fund.

Md.Fin.Inst.Code Ann. § 10–110(a)(2) (1986 Repl.Vol. & Supp.1989).

The D & O Policy is an asset of First Maryland and, thus, of MDIF in its capacity as receiver of First Maryland. *See United Wire v. Board of Savings & Loan,* 316 Md. 236, 247, 558 A.2d 379 (1989) (MDIF as insurer is subrogated to claims of institution or its depositors; hence, assets of institution become assets of MDIF, as successor). As previously explained, the circuit court granted judgment in favor of MDIF for the entire coverage available under the D & O Policy. American Casualty asks us to hold that the "Insured vs. Insured" and "Regulatory" exclusions contained in the D & O Policy limit its liability so as to preclude First Maryland and MDIF from recovering under the D & O Policy.

We believe that to enforce the D & O Policy exclusions as American Casualty suggests would "so seriously hamper [MDIF] in carrying out its duties that public policy prevents [us] from enforcing the [exclusions] ..." *Federal Savings and Loan Insurance Corp. v. Oldenburg,* 671 F.Supp. 720, 724 (D.Utah, 1987). Similar limitations on liability in saving and loan insurance policies have been declared void as against public policy. *See Federal Savings and Loan Insurance Corp. v. Aetna Casualty & Surety Co.,* 701 F.Supp. 1357 (E.D.Tenn.1988) (held that limitations language in blanket bond issued to savings and loan association was an infringement on power of FSLIC to fulfill its duties as receiver of a failed institution and, thus, the contract language was void as against public policy). *See also American Casualty Co. of Reading, PA. v. FSLIC,* 683 F.Supp. 1183 (S.D.Ohio 1988) (held that regulatory exclusion in savings and loan association's D & O policy did not apply to association's claims against its officers and directors for losses allegedly caused by their negligent acts, and noted that other courts had held similar provisions to be void as against public policy).[11]

---

**11.** We are cognizant of the decision in *Continental Casualty Co. v. Allen,* 710 F.Supp. 1088 (N.D.Tex.1989) in which it was held that D & O policies providing limitations on coverage, which were optional

■■■ MDIF does not merely "step into the shoes" of First Maryland and, thus, assume *all* of its contractual obligations. *But see Allen, supra,* 710 F.Supp. at 1100 (held that FDIC "steps into the shoes" of the failed institution and is subject to whatever contractual obligations the institution assumed). MDIF, in its capacity as receiver, has a statutory duty to protect the depositors and creditors of failed savings and loan associations such as First Maryland. More than that, the taxpayers of Maryland are being called upon to help foot the bill for the losses sustained by the depositors and creditors of failed savings and loan associations such as First Maryland. By all accounts, the ultimate liability of the taxpayers of this State on account of the savings and loan crisis will be enormous. According to MDIF's brief, in this case alone, that figure has already reached the magnitude of $387 million.[12] As we have already observed, it was in this climate that the laws creating and empowering MDIF were enacted by the legislature. Therefore, as we see it, contractual limitations in a policy of insurance that applies to the failed savings and loans may *not* be made applicable to MDIF in a situation such as the

---

policies not required by statute, were not invalid on public policy grounds. We are not persuaded by the *Allen* decision, however, as that case is distinguishable from the case *sub judice.* The *Allen* court held that the D & O policy was not an asset of the FDIC. In the case *sub judice,* we conclude that the D & O Policy issued by American Casualty became an asset of MDIF in its capacity as receiver for First Maryland. In addition, the *Allen* court found that there was no statutory law existing in Texas that would void the insurance limitations on public policy grounds. By contrast, we conclude that the D & O Policy exclusions in the case *sub judice* violate the statutory law of Maryland and frustrate the legislative intent in creating MDIF. We are also cognizant of the decision in *American Casualty Company v. FDIC,* No. C86–4018 (D.N.D.Iowa Feb. 26, 1990), which, in relevant part, relied upon the decision in *Allen.*

We also point out that our public policy analysis does not raise an issue of contract impairment. MDIF was created by the legislature on June 1, 1985. The D & O policy issued by American Casualty was last renewed by First Maryland on October 1, 1985. Of course, American Casualty neither briefed nor argued the question of contract impairment.

12. *See* Brief of MDIF, at 483.

one in the case *sub judice.* That is because, in our view, to enforce such contractual limitations would circumvent what we perceive to be the intent of the legislature, and thus the public policy of the State: to empower MDIF to recover, from the assets of failed savings and loan associations, every dollar available in order to protect not only the depositors and creditors of those associations but, ultimately, to protect the taxpayers of this State. In other words, a savings and loan association may not use its power to contract as a means to contravene the statutes or to thwart the public policy of the State.

The law in Maryland is well settled that considerations of public policy are deemed paramount to private rights. Thus, where the two conflict, "private interests must yield to the public good." *Maryland National Capital Park and Planning Commission v. Washington National Arena,* 282 Md. 588, 605, 386 A.2d 1216 (1978). We hold, therefore, that the "Insured vs. Insured" and "Regulatory" exclusions in the D & O Policy issued by American Casualty are contrary to the public policy of the State of Maryland and, are, thus, void and unenforceable. Our position is further supported by the language of Md.Fin.Inst.Code Ann. § 10–120(b) (1986 Repl.Vol. & Supp.1989) and what we perceive to be the legislative intent behind its enactment.

## Priority of Proceeds

Finci contends that the circuit court erred in granting partial summary judgment in favor of First Maryland and MDIF on the issue of priority to the proceeds of the D & O Policy issued by American Casualty. We find no error. We conclude that, as a matter of law, First Maryland and MDIF were entitled to priority over the entire amount of coverage available under the D & O Policy. Thus, summary judgment was proper. Consequently, Finci's motion for summary judgment, seeking reimbursement for his $330,-000 settlement plus attorney fees and costs, was correctly denied as moot, as Finci had no claim to the proceeds.

At the conclusion of a hearing on May 17, 1989, on the issue of priority, the circuit court found that MDIF had priority to the entire $2.995 million available from the D & O Policy issued to First Maryland by American Casualty. The court based its decision on the fact that MDIF was a judgment creditor and, therefore, had a position superior to that of Finci, who had not obtained a judgment against American Casualty. Moreover, the circuit court adopted the arguments set forth by MDIF in its request for priority.

We agree that MDIF, as a judgment creditor, had priority over Finci. Ordinarily, in an insolvency situation, creditors assume a priority position. *See Chevy Chase, supra,* 306 Md. at 402, 509 A.2d 670. That is precisely the situation with which we are presented here. MDIF, acting as receiver for First Maryland, represents the depositors, or "creditors," of First Maryland. *See Id.* at 402, n. 10, 509 A.2d 670. And, of course, as we have explained, MDIF was created in large measure for the purpose of protecting depositors by insuring their accounts and reimbursing them for losses incurred upon the liquidation of failed institutions, up to the amount of the insurance coverage provided to the depositors. Md.Fin.Inst.Code Ann. § 10–110(a)(2)(i) and (iii) (1986 Repl.Vol. & Supp.1989). Having obtained a judgment against American Casualty, MDIF, as a judgment creditor, is entitled to priority over the insurance proceeds so that it may fulfill its purpose of reimbursing depositors, who have an interest in the insurance proceeds, for their losses. *See Chevy Chase, supra,* 306 Md. at 402, n. 10, 509 A.2d 670.

In addition, Maryland statutory law grants MDIF priority over other judgment liens. The relevant statute provides:

(b) **Priority of judgments obtained by Fund; expenses of litigation; application of moneys recorded by Fund.**—Notwithstanding any other provision of law, in any action of the Fund [i.e., MDIF] as insurer, subrogee, conservator, or receiver against a shareholder, director, officer, employee, agent, or other person contributing to a

loss at a member association or to enforce the terms of a net worth certificate or similar obligation:

(1) A judgment obtained by the Fund shall have priority over any other judgment lien on a defendant's real or personal property without need for further perfection or execution thereon;

(2) All attorneys' fees, costs, and expenses of the Fund for the litigation shall be assessed as part of any judgment in favor of the Fund; and

(3) All moneys recovered by the Fund as insurer or subrogee shall be first applied to repay any monetary advance by the State to the Fund, including any and all fees, costs, and expenses, to further the purposes of this title. Moneys so recovered shall be placed in a separate account transferred to the General Fund of the State. The separate account is not subject to attachment or other judicial process by any person.

Md.Fin.Inst.Code Ann. § 10–120(b) (1986 Repl.Vol. & Supp. 1989). *See e.g., United Wire, supra,* 316 Md. at 240, 558 A.2d 379 (recognizing a priority in favor of the State pursuant to Financial Institutions Article § 10–120(b)(3)). And, as we have already noted, MDIF obtained a judgment against American Casualty for $2.995 million. Moreover, although he ultimately settled out of court, Finci, as a former director of First Maryland, appears to be one of the class of persons to whom the statute referred when it granted priority to MDIF in an action against any "other person contributing to a loss at a member association...."

■ The editor's note to § 10–120(b) provides additional support to MDIF's claim for priority, providing that:

Further, because of the benefits inuring to depositors, creditors, and other customers of member associations of the former Maryland Savings–Share Insurance Corporation [predecessor to MDIF] as a result of the emergency acts of the First and Second Extraordinary Sessions of 1985, the General Assembly expressly confirms and reserves, from the effect of a statutory receivership, the State's right to enforce its common-law priority as sover-

eign to the maximum extent permitted under the federal and State constitutions. This act and other applicable law shall be interpreted accordingly.

Our examination of the legislative history of the enactment of Financial Institutions Article § 10–120 (introduced as an emergency measure as House Bill 1374 and Senate Bill number 670) indicates a clear intent on the part of the legislature to give judgments obtained by MDIF priority over other judgments. Moreover, the statute provides that a judgment obtained by MDIF would have priority over any other judgment. In addition, § 10–120(b)(2) allows MDIF to recover attorney's fees, expenses and costs of litigating any claims. The legislative history also indicates that any money recovered by MDIF as insurer or subrogee is to be paid into the General Fund of the State and is not subject to attachment or to other judicial process. (*See generally*, Testimony of Ben Bialek, Chief Legislative Officer, before Savings and Loan Industry Committee (Senate Bill 670) and Economic Matters Committee (House Bill 1374)).

These emergency bills were enacted for the benefit of both the taxpayers of Maryland and the depositors of the State's savings and loan associations. *See Id.* We also note that the Attorney General approved the bills for constitutionality and legal sufficiency. (*See* Letter from Steven H. Sachs, Attorney General, to The Honorable Harry R. Hughes, Governor of Maryland, dated April 3, 1986.)

We conclude that the statutory laws of Maryland and the legislative history of their enactment indicate a clear intention on the part of the legislature to vest MDIF with plenary powers to protect the taxpayers of Maryland and the depositors of the State's savings and loan associations. In accordance with those powers, we hold that the legislature intended to provide priority to any judgments obtained by MDIF over any other judgments, in order that MDIF can fulfill its obligation to protect and reimburse depositors of failed savings and loan associations. Accordingly, we hold that the circuit court properly granted summary judgment to MDIF on the issue of priority to the proceeds of the D &

O Policy issued to First Maryland by American Casualty. Consequently, Finci's motion for summary judgment as to a share of the proceeds was properly denied as moot.

JUDGMENT AFFIRMED.

COSTS TO BE DIVIDED EQUALLY BETWEEN AMERICAN CASUALTY AND FINCI.